1996 SD 84

**Craig James ROBBINS, Plaintiff
and Appellant,**

v.

**Bradley Alan BUNTROCK, Defendant
and Appellee.**

No. 19104.

Supreme Court of South Dakota.

Argued Nov. 29, 1995.

Decided July 2, 1996.

E. Steeves Smith and Donna L. Bucher of Tinan, Smith & Bucher, Mitchell, for plaintiff and appellant.

John Theeler and Melissa R. O'Rourke of Morgan, Theeler, Cogley & Petersen, Mitchell, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1]   Plaintiff involved in an intersection automobile accident appeals a jury verdict for defendant alleging various trial errors. We affirm.

## Facts

[¶ 2]   This case arose from an accident occurring on March 31, 1990 at the intersection of First Avenue and Sanborn Boulevard in Mitchell, South Dakota.  The intersection is controlled by traffic signals.  Craig Robbins was westbound on his motorcycle on First Avenue, proceeding through the intersection.  Bradley Buntrock was driving his automobile east on First Avenue, intending to turn north onto Sanborn Boulevard.  Buntrock and Robbins were unable to see each other due to other traffic within the intersection.  Buntrock started his left-hand turn onto Sanborn when Robbins' motorcycle collided with the right fender and door area of Buntrock's vehicle.  Robbins later told Officer Sambo, who investigated the accident, his speed just before the accident was twenty to twenty-five miles per hour.  Buntrock received a citation for failure to yield to oncoming traffic while making a left-hand turn in violation of SDCL 32–26–19.

[¶ 3]   Robbins' complaint averred Buntrock illegally and negligently turned left, failing to yield the right-of-way.  Buntrock answered, denying Robbins' allegations, and asserted Robbins was contributorily negligent.  At the close of all the evidence, Robbins moved for a directed verdict, which the court denied.  The jury returned a verdict for Buntrock, but in answering the court's special interrogatories it also went on to decide, unnecessarily, that Robbins was contributorily negligent.  Robbins' motion for new trial was denied.  He raises the following issues on appeal:

I.   Whether the trial court abused its discretion when it denied the plaintiff's motion for a mistrial based on the defendant's violation of an in limine motion.

II.   Whether the trial court erred in refusing to allow the investigating officer to give opinion evidence that defendant's negligence caused the accident.

III.   Whether the trial court erred in taking judicial notice that the applicable speed limit was twenty miles per hour.

IV.   Whether the trial court erred when it instructed the jury on speed limits at intersections with obstructed views.

V.   Whether the trial court erred in refusing to direct a verdict against the defendant on negligence as a matter of law, and in failing to grant the plaintiff a new trial on those same grounds.

VI.   Whether the trial court erred in denying plaintiff's motion for the costs necessitated in taking the deposition of defendant's medical expert.

## Analysis

[¶ 4]   **I.  Motion for Mistrial**

[¶ 5]   Robbins moved in limine to exclude any mention of Robbins' nonuse of a motorcycle helmet.  The trial court declined to rule on the motion until after voir dire and opening statements, but indicated no mention was to be made of this matter by either side before a definitive ruling.  Nonetheless, Buntrock's counsel commented during his opening statement:

The second or third day of trial, then we'll get to injuries and, yes, there is some differences there.  Very simply, Mr. Rob-

bins had some facial, head injuries driving through there without his helmet on at the time of the accident and he has those injuries and they've all, according to his doctors, his own doctors, have all healed and we'll hear evidence about that. . . .

Although Robbins did not object to the remark when it was made, following opening statements, he moved for a mistrial, alleging prejudicial violation of the court's order. Finding the objection untimely and the remark nonprejudicial, the court denied the motion.

■ [¶ 6] A trial court's ruling on a motion for a mistrial, based on misconduct of counsel, will not be disturbed absent a clear abuse of discretion. *State v. Stetter*, 513 N.W.2d 87, 90 (S.D.1994), *cert. denied,* — U.S. ——, 114 S.Ct. 2173, 128 L.Ed.2d 894 (1994); *State v. Kidd,* 286 N.W.2d 120, 121–22 (S.D.1979). When a trial judge hears the arguments with the opportunity to observe whether the words had any apparent effect on the jury, deference will be given to the ruling. *Stetter,* 513 N.W.2d at 90 (citing *State v. Havens,* 264 N.W.2d 918, 923 (S.D. 1978)). For a violation of an in limine motion to serve as a basis for a mistrial and a later motion for a new trial, the order must be specific in its prohibition, and a violation must be clear. *Kjerstad v. Ravellette Publications, Inc.,* 517 N.W.2d 419, 426 (S.D.1994). Most importantly, "a new trial may follow only where the violation has prejudiced the party or denied [such party] a fair trial." *Id.* "Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *Id; State v. Michalek,* 407 N.W.2d 815, 818 (S.D.1987). Robbins contends the statement was prejudicial because the jury could infer, "that because of Craig Robbins' reckless disregard for his own safety by not wearing a helmet, he should be held responsible for everything that happened to him." However, the helmet remark referred to mitigation of damages, not the issue of liability, the issue disposed of by the verdict. Whether the jury inferred somehow that lack of a helmet made Robbins responsible for the accident belongs to conjecture, but we must defer to the trial court in hearing the whole opening statement and

observing its influence on the jury. Robbins has failed to show the comment, though improper in view of the court's order, rises to the level of being prejudicial, preventing a fair trial. We find no abuse of discretion in denying the mistrial motion.

[¶ 7] **II. Investigating Officer's Opinion**

■ [¶ 8] The investigating police officer testified from the accident report, stating his observations and results of his investigation. Yet Robbins wanted the officer to "explain to the jury why [Buntrock] was negligent, and how that negligence caused this accident[.]" Finding such testimony would not assist the jury, the trial court ruled these opinions inadmissible. Trial courts possess broad discretion in ruling on the qualifications of experts and the admissibility of their testimony. *Zens v. Harrison,* 538 N.W.2d 794, 795 (S.D.1995); *State v. Werner,* 482 N.W.2d 286, 291 (S.D.1992). Evidentiary rulings will not be disturbed unless there is a clear showing of an abuse of discretion. *Zens,* 538 N.W.2d at 795; *State v. Hanson,* 456 N.W.2d 135, 138 (S.D.1990). Although SDCL 19-15-4 (Rule 704) has been revised, allowing witnesses to testify on ultimate issues, opinions must still help the trier of fact to understand the evidence or determine issues of fact. *Zens,* 538 N.W.2d at 795–96; SDCL 19-15-2 (Rule 702). Resolving negligence questions is an elemental jury function and opinions couched purely in terms of negligence may confuse and misdirect, rather than assist the jury. *Zens,* 538 N.W.2d at 796. We find no abuse of discretion.

[¶ 9] **III. Judicial Notice of Speed Limit**

■ [¶ 10] The trial court refused to allow Robbins to ask the acting chief of police and the investigating officer their opinions on whether the applicable speed limit was twenty-five miles per hour. Instead, the court took judicial notice of the speed limit based upon city ordinances, a map showing the location of speed limit signs, and the testimony of Dick Figland, of the city traffic department. Figland identified three twenty mile per hour speed limit signs along First Avenue. One was posted two blocks ahead of

where Robbins turned onto First Avenue and another one a block past the intersection of Sanborn and First. The distance between posted signs was six city blocks. Regardless, Robbins believes the posted speed limit was inapplicable to him, because there were no speed limit signs between the point where he turned onto First Avenue and the intersection where the accident occurred. To him the legal speed limit was controlled by a city ordinance, which set the limit at twenty-five miles per hour in nonbusiness districts. He cites no authority requiring the city to post signs on every block or holding that posted limits are inapplicable to drivers who do not pass a speed limit sign. *See* SDCL 32–25–9. Trial courts are authorized to take judicial notice of speed limits. SDCL 19–10–2; *State v. Dale*, 360 N.W.2d 687, 690 (S.D.1985). The court did not err in taking judicial notice of the twenty mile per hour posted speed limit zone.

[¶ 11] **IV. Intersection Speed Limit— Driver's View Obstructed**

[¶ 12] Robbins asserts the trial court erred in giving jury instruction sixteen, because it improperly stated the law of South Dakota.[1] "Jury instructions are viewed as a whole and are sufficient if they correctly state the law and inform the jury." *Sommervold v. Grevlos*, 518 N.W.2d 733, 739 (S.D.1994). We review the applicable law in the area instructed by the trial court. Mitchell City Ordinance 23–29 states:

> No person shall drive a vehicle upon any street, alley or public place in the city at a speed greater than is reasonable and prudent under the conditions then existing, and it shall be prima facie unlawful and prima facie evidence that the speed is not

reasonable and prudent under the conditions then existing, for the driver of any vehicle or motor vehicle to drive the same upon any street, alley or public place in the city at a speed exceeding the following:

> (c) Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection. . . .

This ordinance is nearly identical to SDCL 32–25–15. The question is whether the word "obstructed" as used in SDCL 32–25–15 and Mitchell City Ordinance 23–29 includes an obstruction of vision caused by traffic located within the intersection.

[¶ 13] Robbins states "an obstruction must be a non-mobile obstruction, such as a tree, a bush or a house." This is too narrow a definition. The construction of a statute which allows illogical results should be avoided. *In re P.A.M.*, 505 N.W.2d 395, 397 (S.D.1993); *Nelson v. South Dakota State Bd. of Dentistry*, 464 N.W.2d 621, 624 (S.D.1991). Although most cases interpreting this language have dealt with permanent obstructions, the manifest intent behind this language is to require drivers to slow down when entering an intersection in which their view is hindered by anything. In *Friese v. Gulbrandson*, 69 S.D. 179, 8 N.W.2d 438 (1943), this Court stated:

---

1. Jury instruction sixteen:
   A section of the Code of the City of Mitchell provides that a driver shall not drive a vehicle on a public street "at a speed greater than is reasonable and prudent under the condition then existing." The same Code section further provides that it is "prima facie evidence that the speed is not reasonable and prudent under the conditions then existing" for a driver to drive on a street at a speed exceeding fifteen (15) miles per hour when approaching within fifty feet and in traversing an intersection of streets when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time dur-

ing the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the streets entering such intersection for a distance of 200 feet from such intersection.
   This section of the Code sets the standard of care of the ordinarily careful and prudent person. If you find that the Defendant, Bradley Alan Buntrock, violated this standard, such violation is negligence. If you find that the Plaintiff, Craig Robbins, violated this standard, such violation is contributory negligence.

The object of the legislature is apparent. . . . [I]t sought to regulate and adjust the speed of a driver to his opportunities for uninterrupted observation. To assure such control as would permit almost instantaneous stops, it required a driver with an obstructed view to reduce his speed to fifteen miles per hour at a distance of fifty feet from the cross-traffic danger zone.

*Id.* at 185, 8 N.W.2d at 440–41 (discussing the forerunner to SDCL 32–25–15). *See Mueller v. Trudell,* 78 S.D. 624, 629–30, 106 N.W.2d 374, 377 (1960)(moving vehicle obstructed driver's vision and was a substantial factor in automobile accident); *Woodman v. Powers,* 242 Mass. 219, 136 N.E. 352 (1922) (fog an obstruction: "It would be too narrow a construction of the statute to hold that it applies to obstruction of a permanent character only.")

[¶ 14] When considering whether there is evidentiary support for an instruction, a reviewing court must give the evidence the most favorable treatment it will reasonably bear. *Treib v. Kern,* 513 N.W.2d 908, 912 (S.D.1994). The following evidence favors the use of this instruction: (1) Kerry Morgan testified the parties' vision was impaired due to traffic obstruction; (2) the police officer read from his investigatory notes, "[b]oth drivers state that westbound traffic turning left on southbound Sanborn Boulevard contributed to vision obscurement;" (3) Robbins stated he "could not see the red car [Buntrock vehicle] because of a vehicle making a left hand turn;" (4) Brad Martin testified the view looking east on First was obstructed by other traffic; and (5) Buntrock testified his vision was obstructed due to other traffic at the intersection. Further, Robbins acknowledges in his brief "[n]either party saw the other, the view being mutually obscured by the Kerry Morgan vehicle." We see no error in the trial court's instruction on the speed limit in an intersection with an "obstructed view."

[¶ 15] **V. Motions for Directed Verdict and New Trial**

[¶ 16] When reviewing refused motions for a directed verdict, we examine the evidence in a light most favorable to the

nonmoving party, giving that party the benefit of all reasonable inferences fairly drawn from the evidence. *Denke v. Mamola,* 437 N.W.2d 205, 207 (S.D.1989); *Kreager v. Blomstrom Oil Co.,* 379 N.W.2d 307, 310 (S.D.1985); *Koupal & Anton, Inc. v. Wieczorek,* 375 N.W.2d 639, 640 (S.D.1985). If there is any substantial evidence to sustain the cause of action or defense, it must be submitted to the finder of fact. *BankWest, Inc. v. Valentine,* 451 N.W.2d 732, 734 (S.D. 1990); *Denke,* 437 N.W.2d at 207. Similarly, a motion for a new trial is addressed to the sound discretion of the trial court; we will not overturn the court's ruling unless it appears affirmatively from the record there has been an abuse of discretion. *Fullmer v. State Farm Ins. Co.,* 498 N.W.2d 357, 361 (S.D.1993); *Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149, 153 (S.D.1986); *Simmons v. City of Sioux Falls,* 374 N.W.2d 631, 632 (S.D.1985).

[¶ 17] Robbins states in his brief, "[n]umerous South Dakota cases hold that the failure of a motor vehicle driver to see another vehicle which is favored over his at an intersection constitutes negligence." We agree, but Robbins fails to acknowledge that questions of negligence and contributory negligence are for the jury in all but the rarest cases. *Nelson v. Nelson Cattle Co.,* 513 N.W.2d 900, 903 (S.D.1994). Robbins asserts Buntrock violated SDCL 32–26–19 and such violation is negligence per se. He cites to *Dartt v. Berghorst,* 484 N.W.2d 891 (S.D.1992) and *Albers v. Ottenbacher,* 79 S.D. 637, 116 N.W.2d 529 (1962) to support this proposition. However, both those holdings were based upon insufficiency of evidence to support an assertion of "legal excuse." *Dartt,* 484 N.W.2d at 896–98; *Albers,* 79 S.D. at 640–43, 116 N.W.2d at 530–32. *Albers* lists four categories of excusable violations of traffic regulations, one being an excuse specifically provided by statute. 79 S.D. at 642, 116 N.W.2d at 531. We need only look to the language of the statute:

The driver within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to consti-

tute an immediate hazard, *but the driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right-of-way to the vehicle making the left turn.* A violation of this section is a Class 2 misdemeanor.

SDCL 32–26–19 (emphasis added).[2] Quoting this statute verbatim, the court instructed the jury: "This statute sets the standard of care of the ordinarily careful and prudent person. If you find that the Defendant violated it, such violation is negligence. If you find that the Plaintiff violated it, such violation is contributory negligence." Giving all reasonable inferences to the verdict, the jury could have found Robbins was exceeding the speed limit and Buntrock, by starting to make a left-hand turn, was in a favored position in the intersection requiring Robbins to yield to Buntrock. This theory is supported by the evidence and obviously, the fact finder was entitled to give greater weight to Buntrock's version. *Nelson*, 513 N.W.2d at 905. The trial court did not abuse its discretion and properly left the questions of negligence for the jury.

[¶ 18]   **VI.   Costs for Deposing Medical Expert**

[¶ 19]   During the pretrial conference Buntrock's counsel indicated he would call Dr. John Billion as a medical expert witness for the defense. Anticipating his testimony, Buntrock's counsel stated: "I'll go to the neck and say in probability would he have sustained less of a neck injury and he [Dr. Billion] is going to say yes.... [Dr. Billion will] have an opinion that [Robbins] would have had less severe injuries had he had a helmet." Based on this representation Rob-

bins decided to take Dr. Billion's deposition. Yet when Dr. Billion was deposed he testified Robbins' cervical injuries would not have been any less severe had Robbins been wearing a helmet. Based on counsel's misstatement, which Robbins labeled "unreasonable acts," Robbins moved to recover his costs incurred in taking this deposition. *See Widdoss v. Donahue*, 331 N.W.2d 831, 834 (S.D. 1983). The trial court denied the motion.

[¶ 20]   It appears Buntrock's counsel was basing his prediction on what Dr. Billion would testify to by referring to his medical report in which Dr. Billion noted Robbins was not wearing a helmet. Neck injuries were not the only trauma Robbins suffered. He also received facial and teeth injuries and Dr. Billion testified these injuries would have been lessened had Robbins been wearing a helmet. Furthermore, Robbins' counsel himself stated during the pretrial conference, before the statement made by Buntrock's counsel, which Robbins claims induced him to take Dr. Billion's deposition, that he would "need to take Dr. Billion's deposition and go through a whole bunch of stuff...." We find no abuse of discretion in refusing to award the cost of taking Dr. Billion's deposition.

[¶ 21]   Affirmed.

[¶ 22]   MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.

---

2.   This statute has since been amended. *See* 1994   Sess. L. ch. 262.