562 N.W.2d 898 (1997)
1997 SD 51
STATE of South Dakota, Plaintiff and Appellee,
v.
Marlo D. HOFMAN, Defendant and Appellant.
No. 19692.
Supreme Court of South Dakota.
Considered on Briefs March 27, 1997.
Decided May 7, 1997.
*899 John D. Knight, Deuel County State's Attorney, Clear Lake, for Plaintiff and Appellee.
Terry J. Sutton, Watertown, for Defendant and Appellant.
SABERS, Justice
[¶ 1.] Marlo Hofman appeals his conviction for first-degree murder of his brother. He claims 1) the trial court should have suppressed the second statement he made to police as involuntary and coerced since the court suppressed his first statement, made hours earlier in the presence of the same police officer. Additionally, he argues 2) his motion for mistrial should have been granted when the State elicited testimony referring to the suppressed statement and 3) the trial court should have excluded a pathologist's testimony concerning tests conducted on a knife, because he was not provided with a report prior to trial. We affirm.

FACTS
[¶ 2.] Marlo's brother, Ronald "Doc" Hofman (Doc), was murdered June 19, 1995 in his bar in Brandt, South Dakota. Doc died as a result of multiple stab wounds to his neck. Marlo discovered Doc's body the morning of June 20; he went home, got his mother, and went back to the bar. After returning home a second time, Marlo told a neighbor there must have been a robbery at Doc's bar because Doc was lying on the floor. The neighbor contacted police and an investigation followed. The police removed various items from the house where Marlo lived with his mother, including his clothing and numerous knives.
[¶ 3.] The investigating agent for the Division of Criminal Investigation (DCI), Bryan Gortmaker (Gortmaker), asked Marlo to take a polygraph test in Sioux Falls. Marlo agreed. His cousin, Brian Ruhd (Ruhd), *900 drove him to Sioux Falls the next day, June 24, 1995. A polygraph test was conducted by DCI Agent Fred DeVaney. DeVaney and Gortmaker each separately interrogated Marlo, who eventually admitted killing Doc.[1] No Miranda warnings were given. Marlo, who suffers from paranoid schizophrenia, requested psychiatric attention. Later, Gortmaker and DeVaney escorted him to McKennan Hospital, which apparently denied admission to Marlo.
[¶ 4.] Ruhd met Marlo and the agents at the emergency room, where Gortmaker instructed Marlo to tell Ruhd "what he had told them." Marlo then told Ruhd, "I killed Doc." Gortmaker next drove Marlo to Brookings to transfer custody of Marlo to Deuel County Deputy Sheriff Dave Solem (Solem). During the transfer, Gortmaker told Marlo to repeat to Solem what he told Gortmaker in Sioux Falls.[2] Marlo again stated that he "killed Doc." Marie Suman, a jailer at the Codington County Jail in Watertown, testified that as she prepared to "book" Marlo, in response to her question, "So Marlo, what are we doing here today?" he told her, "I murdered my brother," "I slit his throat," and "I hated my brother." Once in jail, Marlo told a fellow inmate (Todd Bren) he fought with and killed his brother. All of this testimony was admitted at trial, some without objection.
[¶ 5.] Marlo made a motion to suppress the videotaped statement, which was granted. The trial court found Gortmaker's interview style to be quite confrontational. He seated himself in front of Marlo in such a manner as to prevent Marlo from leaving the room. Before making any admissions, Marlo requested psychiatric attention; his request was ignored by Gortmaker. Gortmaker actually touched Marlo in the chest area with two fingers when emphasizing the importance of Marlo confessing so the "pain could go away." Gortmaker was aware of Marlo's mental condition, and the trial court held that he played on Marlo's susceptibility to coercion and manipulation by employing aggressive and intimidating interview techniques. The trial court also found the polygraph examination was used as a "psychological rubber hose" to elicit inculpatory statements. Marlo was never told he had the right to discontinue the test at any time or that he did not have to answer every question. The trial court held that the polygraph was used for more than just the elimination or generation of a suspect, but was also used as a tool to elicit inculpatory statements from the defendant; therefore, the court held Marlo should have been given the "Caffrey" warnings:
As part of the effort to remove or mitigate the pressures toward self-incrimination generated by a polygraph situation, we deem it essential that a person subject to a polygraph examination be apprised, at a minimum, of the rights to refuse to take the test, to discontinue it at any point, and to decline to answer any individual questions.
State v. Caffrey, 332 N.W.2d 269, 274 (S.D. 1983) (adopting standard from United States v. Little Bear, 583 F.2d 411, 414 (8th Cir. 1978)). As indicated above, no Miranda warnings were given. He was told before the post-examination interrogation that he failed the test. At one point, Gortmaker implied that Marlo might have to undergo another polygraph examination if he did not tell the whole truth.
[¶ 6.] Marlo did not move to suppress any other statements until the fifth morning of trial, after the jury was selected, when he made a motion to suppress the statement made to Solem and Gortmaker and the statement made to Ruhd. The trial court indicated it was an untimely motion which should have been brought earlier when there was an opportunity to conduct a hearing; however, the court ruled alternatively that the second confession was sufficiently attenuated in time and place from the first, not coerced, and therefore admissible. The court also ruled *901 the statement to Ruhd would be admitted because "an admission made to a private party is [never] suppressible." The court further ruled the statement to Suman was admissible, even though, as Marlo's counsel noted, he did not seek to suppress her testimony. The only admission Marlo appeals is the statement made to Solem and Gortmaker.
[¶ 7.] Following Ruhd's testimony, Marlo made a motion for mistrial based upon a reference by Ruhd to the previously suppressed statement. Marlo claims this constituted prosecutorial misconduct because the reference violated the court's order. The trial court denied the motion for mistrial.
[¶ 8.] The pathologist who performed an autopsy on Doc was allowed, over Marlo's objection, to testify regarding measurements and tests conducted on a knife in relation to Doc's wounds. Marlo argues that since this information was not included in any reports supplied to the defense prior to trial, he was surprised and unfairly prejudiced and the testimony should have been suppressed.

[¶ 9.] 1. WHETHER THE STATEMENT MADE TO AGENT GORTMAKER AND DEPUTY SOLEM SHOULD ALSO HAVE BEEN SUPPRESSED.
[¶ 10.] State argues Marlo cannot appeal this issue because the motion was untimely made. We agree. SDCL 23A-8-3 (FedRCrimP 12(b)) provides, in pertinent part:
Any defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
. . . . .
(4) Motions to suppress evidence[.]
(Emphasis added). In this case, the motion to suppress was not made until after the jury was selected and testimony about to begin. In State v. Maves, 358 N.W.2d 805 (S.D. 1984), the defendants appealed the denial of their motions to dismiss the charges, which they brought after the jury was informed through the reading of the informations that an earlier trial resulted in a verdict of guilty for one defendant. Subdivision (3) of SDCL 23A-8-3 provides that defenses and objections relating to the indictment or information must also be raised by motion before trial or the issue will be considered waived. See Maves, 358 N.W.2d at 810 ("Having failed to make such a motion, they will not now be heard to complain[.]"). See also State v. Wiegers, 373 N.W.2d 1, 11-12 (S.D. 1985) (agreeing with the defendant that he was denied his constitutional right to the effective assistance of counsel by reason of his counsel's failure to make a pretrial motion to suppress the statements he made to government agents, when counsel had full knowledge several months before trial that the State possessed a recording of the interrogation).[3]
[¶ 11.] In the present case, the defense was aware, long before trial, of the recorded statement made to Gortmaker and Solem and does not claim otherwise. See Maves, 358 *902 N.W.2d at 810 ("[A] criminal trial is not a game where defense counsel may lie in wait with motions or objections that go to the very heart of the prosecution."). Because Marlo failed to bring a timely pretrial motion to suppress, this issue is deemed waived. Id.

[¶ 12.] 2. WHETHER IT WAS AN ABUSE OF DISCRETION TO DENY MARLO'S MOTION FOR MISTRIAL FOR PROSECUTORIAL MISCONDUCT WHEN THE STATE ELICITED TESTIMONY WHICH REFERRED TO THE SUPPRESSED STATEMENT.
[¶ 13.] Marlo argues he was prejudiced by Ruhd's testimony because it clearly referred to the suppressed confession. The testimony was as follows:
STATE: Did you ask Marlo anything?
RUHD: No, not thatno, I didn't.
STATE: Did the detective ask Marlo to tell you what had happened?
RUHD: Right. They told Marlo to tell me what he had told them.
We review the denial of a motion for mistrial based on misconduct of counsel under an abuse of discretion standard. Robbins v. Buntrock, 1996 SD 84, ¶ 6, 550 N.W.2d 422, 425 (citations omitted). "[A] new trial may follow only where the violation has prejudiced the party or denied such party a fair trial." Id. "Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." Id.
[¶ 14.] While it may not be proper to bolster an involuntary, coerced confession by prodding the defendant to repeat it to a third person, Marlo neither made a timely motion to suppress nor appealed the admission of Ruhd's testimony. We agree with the trial court that the question was not necessarily phrased to elicit a reference to the suppressed statement, and there is no showing of prosecutorial misconduct. It is doubtful the jury put undue weight on Ruhd's remark, given the fact it also heard testimony that Marlo confessed to Gortmaker and Solem, Jailer Suman, and fellow inmate Todd Bren. Accordingly, the defense has failed to show an abuse of discretion by the trial court or prejudicial error.

[¶ 15.] 3. WHETHER TESTIMONY CONCERNING TESTS CONDUCTED ON A KNIFE SHOULD HAVE BEEN SUPPRESSED WHEN THE DEFENSE WAS NOT PROVIDED THE RESULTS PRIOR TO TRIAL.
[¶ 16.] Marlo argues the admission of the pathologist's testimony regarding the consistencies of measurements taken of a knife and Doc's wounds constituted "trial by surprise," in violation of the discovery order. Because these tests were not included in the report provided, he claims he was deprived the opportunity to consult with his own expert and therefore, he was not able to effectively cross-examine the pathologist.
[¶ 17.] The trial court gave defense counsel an opportunity to consult with his own expert prior to the admission of this testimony:
THE COURT: Then I am inclined to go ahead and let that in, because the defense knew that this knife was probably going to be focused on and the knife was available for the defense to look at and have its expert examine it, and still can as far as I am concerned. If you want to send a picture down to your expert or even if you want special permission to release the exhibit itself, I will do that.
MR. SUTTON: Thank you, Your Honor. I will arrange to do that.[4]
The State contends the pathologist did not include this particular information in any written report, so there was no report to give to the defense. In any event, the trial court treated the matter as if there was a failure to comply with a discovery order. See SDCL 23A-13-17 (FedRCrimP 16(d)(2)):
If, at any time during the course of a proceeding, it is brought to the attention of *903 a court that a party has failed to comply with an applicable discovery provision, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.
(Emphasis added). See State v. Oster, 495 N.W.2d 305, 309 (S.D.1993) ("The remedy for nondisclosure of discoverable material is left to the sound discretion of the trial court."). Marlo has not shown that the State's noncompliance with the discovery order prejudiced his defense. State v. McKee, 314 N.W.2d 866, 867 (S.D.1982) ("[N]ot every failure to produce evidence as ordered is, without more, prejudicial error."). Nor has he demonstrated an abuse of discretion in the trial court's proposed remedy. Oster, 495 N.W.2d at 309.
[¶ 18.] Affirmed.
[¶ 19.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.
NOTES
[1] The polygraph examination and the subsequent interrogation were videotaped.
[2] The conversation that followed was recorded on audio tape.
[3] Normally, claims of ineffective assistance of counsel will only be examined by this court in the context of post-conviction proceedings. Wiegers was allowed to bring his claim of ineffective assistance of counsel on direct appeal because this court concluded "the record before us manifests on its face that defense counsel's representation of defendant on this particular issue fell below an objective standard of reasonableness." Wiegers, 373 N.W.2d at 12. Various factors counsel against our considering whether Marlo was denied his constitutional right to effective assistance of counsel in this direct appeal. First, appellate counsel is the same as trial counsel and obviously did not raise such a claim. Second, since Wiegers, we have strengthened our policy of reserving judgment on this issue until post-conviction proceedings. See, e.g., Jenner v. Leapley, 521 N.W.2d 422, 430-31 (S.D.1994) ("Settled law holds that such a determination is preferably addressed in habeas corpus proceedings, not on direct appeal, because the attorney accused of incompetence has the opportunity to explain his actions.") (citing State v. Jett, 474 N.W.2d 741, 743 (S.D.1991); State v. Aliberti, 401 N.W.2d 729, 732 (S.D.1987)). "Moreover, it is only through habeas corpus that a sufficient record can be made to allow the appropriate review." State v. Petersen, 515 N.W.2d 687, 688 (S.D.1994) (quoting Jett, 474 N.W.2d at 743).
[4] The defense offered no expert testimony concerning the knife or the autopsy.