1999 SD 81

STATE of South Dakota, Plaintiff
and Appellee,

v.

David Allen LEE, Defendant
and Appellant.

No. 20513.

Supreme Court of South Dakota.

Considered on Briefs March 22, 1999.

Decided June 30, 1999.

Mark Barnett, Attorney General, Constance K. Nilles, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Lynn E. McGuire, Minnehaha County Public Defender's Office, Sioux Falls, South Dakota, Attorney for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] David Lee appeals his conviction of the second-degree murder of his prison cellmate. We affirm.

## FACTS

[¶ 2.] Lee shared a cell with Robert Walth in the South Dakota State Penitentiary. During the early hours of September 9, 1997, Lee and Walth were doing beadwork and watching a movie. They were also clandestinely consuming "hooch," a homemade alcohol. Although Lee provided investigators with two different versions of the events that followed,[1] he testified at trial that, after consuming approximately eight to ten cups of hooch, he either fell asleep or passed out. He stated that when he awakened, Walth was performing oral sex on him. He testified that he then "lost it" and started kicking Walth, but was unsure if he pushed or hit him. After he kicked Walth and while Walth was lying on (or near) a sheet, Lee stepped on one end of the sheet, which was wrapped around Walth's neck, and pulled on the other end. He stated that he quit pulling when he determined that Walth had stopped breathing. When a guard walked by the cell, Lee called out to him and indicated that he may have injured his cellmate. The guard obtained additional help and placed Lee in the shower area. A nurse attended to Walth until paramedics arrived and transported him to the hospital, where he died later that morning.

[¶ 3.] Lee was indicted on alternate counts of first-degree murder, second-degree murder and first-degree manslaughter. He pled not guilty to all counts. The jury found him guilty of second-degree murder. He was sentenced to life in the penitentiary.

[¶ 4.] On appeal, it is asserted that:

1. The trial court erred by not allowing Lee's expert to testify.

2. The trial court erred in refusing Lee access to Walth's penitentiary records.

3. Prosecutorial misconduct occurred which warranted a mistrial.

## DECISION

[¶ 5.] **1. The trial court did not err in refusing to admit the testimony of Lee's expert witness.**

■ [¶ 6.] Lee sought to introduce the testimony of Dr. Bernard Katz, a psychiatrist who had examined him, reviewed his records, and met with his mother. During trial, Lee made an offer of proof concerning Dr. Katz's testimony. Out of the presence of the jury, Dr. Katz testified that, in his opinion, Lee's specific intent to commit a crime was compromised by four factors: (1) the fact that he had been drinking heavily; (2) the fact that he was awakened from his sleep; (3) the fact that he had a particular aversion to being considered homosexual or to any kind of homosexual activity; and (4) the possibility that he may have had a dissociative episode at the time of the incident.

[¶ 7.] The court determined that Dr. Katz's testimony was inadmissible, stating that

[t]his is clearly not a case involving insanity or the plea of guilty or even not guilty by reason of mental illness, so the Court is not allowed to introduce or allow the introduction of evidence concerning that.

Taking the doctor's testimony in the light most favorable to the defense, it seems to me that that's exactly what he's testifying about. Taking it the other way, it seems to me like we don't need an expert to explain to us that someone with a history wakes up and has a reflex action, that that's not the kind of testimony that's appropriate for

---

1. In his initial meeting with investigators, Lee claimed that as he was climbing into his bunk to go to sleep, Walth reached for Lee's groin area and asked if he could perform oral sex on him.

expert testimony, that lay people know that already.

Based upon that and based upon the fact that I'm afraid that the jury is going to be totally misled and given information that does not apply to this case, I'm going to grant the State's motion in limine concerning the doctor's testimony involving diminished ability to form the specific intent required.

[¶ 8.] Lee claims the trial court erred in precluding Dr. Katz's testimony from being presented to the jury, because such testimony was evidence of Lee's state of mind at the time of the incident; therefore, it went directly to the issue of specific intent. We disagree.

[¶ 9.] SDCL 19–15–2 addresses admissibility of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

[¶ 10.] "The admissibility of an expert's opinion is within the broad discretion of the trial court." *State v. Moeller*, 1996 SD 60, ¶ 87, 548 N.W.2d 465, 485 (citations omitted). "We will reverse the trial court's decision only where there has been a clear showing of an abuse of discretion." *Id.* (citations omitted). "In admitting expert testimony, the determining factor is 'whether it would assist the jury in understanding matters that normally would not lie within a layman's breadth of knowledge.'" *State v. Moriarty*, 501 N.W.2d 352, 359 (S.D.1993) (quoting *State v. Bachman*, 446 N.W.2d 271, 275 (S.D.1989)).

[¶ 11.] The trial court determined that Dr. Katz's testimony would not assist the jury in understanding the evidence or in determining a fact in issue. In addition, the court determined that any information

that Katz's testimony could provide was the type of information of which lay people would already possess knowledge. Therefore, it found the testimony to be inadmissible.

[¶ 12.] After reviewing the record, we cannot say that the trial court clearly abused its discretion in making such determinations. *See State v. Werner*, 482 N.W.2d 286, 291–92 (S.D.1992); *State v. Hill*, 463 N.W.2d 674, 677 (S.D.1990). We find no error.

[¶ 13.] **2. The trial court did not err in denying Lee access to Walth's penitentiary records.**

[¶ 14.] Prior to trial, Lee sought discovery of Walth's penitentiary records. He argued that access to the records was necessary to establish whether Walth had previously committed a sexual assault on another inmate. The trial court denied the motion, stating that Lee could testify to his personal knowledge of Walth; therefore, the records were not needed.

[¶ 15.] During trial, State called Dr. Brad Randall, the forensic pathologist who performed the autopsy on Walth. Randall testified that the autopsy revealed no physical signs that would indicate homosexual activity; however, he could not conclude whether Walth had participated in such activity while at the penitentiary. Based on Randall's testimony, Lee renewed his request to view Walth's penitentiary records, particularly his disciplinary records, which Lee claimed would indicate whether Walth had been disciplined for homosexual activity. Lee also requested that he be allowed to review Walth's police record concerning his prior rape conviction.[2]

[¶ 16.] The trial court determined that, because the State "opened the issue" of homosexual activity through Randall's testimony, an in-camera review of Walth's penitentiary disciplinary records was need-

---

**2.** Lee claimed that there may be police records which contained a statement that Walth

committed the rape in order to return to his lover in the penitentiary.

ed. After such review, the trial court ascertained that only two matters related to sexual activity, and those incidents were not relevant and thus inadmissible.[3] The court also denied Lee's motion to review the police reports regarding Walth's prior rape conviction.

[¶ 17.] Lee claims the trial court's review of the penitentiary records was inadequate,. and its denial of his access to the police reports prevented him from presenting a thorough defense and receiving a fair trial. He further argues that evidence of Walth's previous homosexual activities would have been admissible character evidence. We disagree.

[¶ 18.] A trial court's evidentiary rulings "are presumed correct and are reviewed under an abuse of discretion standard." *State v. Larson*, 1998 SD 80, ¶ 10, 582 N.W.2d 15, 17 (citing *State v. Goodroad*, 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129 (citation omitted)). " 'The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion.' " *Id.* (quoting *Goodroad*, 1997 SD 46, ¶ 9, 563 N.W.2d at 129 (citation omitted)).

[¶ 19.] After closely reviewing the record, including a review of the penitentiary records, we find that the trial court correctly held that the information contained in Walth's penitentiary disciplinary records was not relevant. In addition, we can find no error in the court's ruling denying Lee access to Walth's previous police record.

[¶ 20.] **3. The prosecutor's conduct did not violate Lee's right to a fair trial.**

[¶ 21.] " 'Prosecutorial misconduct implies a dishonest act or an attempt to persuade the jury by use of deception or by reprehensible methods.' " *State v. Knecht*, 1997 SD 53, ¶ 17, 563 N.W.2d 413, 420 (quoting *State v. Davi*, 504 N.W.2d 844, 855 (S.D.1993) (citation omitted)). " '[N]o hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts.' " *State v. Stetter*, 513 N.W.2d 87, 90 (S.D.1994) (quoting *State v. Kidd*, 286 N.W.2d 120, 121–22 (S.D.1979) (citations omitted)). " 'Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it.' " *State v. Hofman*, 1997 SD 51, ¶ 13, 562 N.W.2d 898, 902 (quoting *Robbins v. Buntrock*, 1996 SD 84, ¶ 6, 550 N.W.2d 422, 425 (citations omitted)). Furthermore, the trial court's ruling on a motion for a new trial based on misconduct of counsel will not be disturbed " 'unless we are convinced there has been a clear abuse of discretion.' " *Stetter*, 513 N.W.2d at 90 (quoting *Kidd*, 286 N.W.2d at 121–22).

---

3. The incidents to which the court referred occurred in 1990 and 1992. In reviewing the records, we found no mention of the 1990 incident. However, the court indicated that the report was included in some type of log, which failed to include the author's name. It made reference to Walth cutting himself to send a message to an inmate boyfriend. The individual writing the report indicated the information did not come from Walth, but rather came from another officer. The court determined that this incident was too remote and was, at least, secondhand hearsay; thus, the possibility of it misleading the jury outweighed its possible relevance.

The 1992 incident apparently involved a female officer to whom Walth exposed himself. The court determined that this incident failed to support Lee's claim of homosexual activity.

In addition, upon reviewing the records, we found a third incident involving Walth's sexual acts. In 1993, Walth attempted to rape a female penitentiary employee. We find that this incident, like those mentioned by the trial court, is not relevant to Walth's homosexual activity with other inmates. Moreover, Lee testified that he had knowledge of this incident.

[¶ 22.] Lee claims the prosecutor misstated facts and made improper arguments and inappropriate comments at least nine times during the trial. He argues that the prosecutor's conduct had a prejudicial effect on the jury and that the court should have granted his motion for a mistrial. We disagree.

### a. Agent Severson's contact with a potential juror.

■■■ [¶ 23.] Lee claims misconduct occurred when Agent James Severson, an investigator in the case and a State's witness, spoke to a potential juror after the first day of voir dire was completed. Lee was permitted to examine Severson about this issue outside the presence of the other potential jurors. Severson acknowledged speaking with one of the potential jurors, a woman with whom he was well acquainted. He testified that he approached her as she was standing outside the courthouse and asked her if she needed a ride. He stated that the conversation had no connection to the case, and that most of the other potential jurors were gone by the time the conversation occurred.

[¶ 24.] After Lee finished examining Severson, the trial court informed Severson that he was to have no further conversation with any of the jurors. Lee did not ask the trial court to take any further action regarding Severson's conduct.

[¶ 25.] We find that, although Severson's conduct was improper, Lee has failed to establish that actual prejudice resulted from it. Therefore, no reversible error has been shown. See Stetter, 513 N.W.2d at 90.

### b. Prosecutor's reading of the indictment.

■■■ [¶ 26.] After the jury was seated, and prior to the opening statements, the trial court asked the prosecutor to read the pertinent parts of the indictment and state the defendant's pleas. After reading the indictment, the prosecutor stated that Lee had entered a plea of guilty on each count. The court promptly corrected the prosecutor's statement, advising the jury that the defendant had entered pleas of not guilty on all counts. The prosecutor apologized, corrected the error, and then proceeded with the opening statement.

[¶ 27.] Lee's claim that this conduct prejudiced him and prevented him from receiving a fair trial is without merit. The prosecutor's conduct was nothing more than a misstatement, which was immediately and appropriately remedied by the court. See State v. Zemina, 87 S.D. 291, 206 N.W.2d 819, 825 (S.D.1973). No error occurred.

### c. Prosecutor's questioning of Severson regarding his observations of Lee's injuries.

■■■ [¶ 28.] During direct examination, the prosecutor questioned Agent Severson regarding his observations of Lee's injuries. The exchange went as follows:

PROSECUTOR: Did you see any injuries on Lee?

SEVERSON: The only injuries I saw on Mr. Lee were one small bruise to the bottom of his right foot. He had three fresh cut marks on his shoulder that were still not completely scabbed over and he had a red mark on the right side of his face.

PROSECUTOR: Now, were those cut marks or burn marks?

SEVERSON: They were both. From past experience working at the penitentiary . . .

At this point, Lee objected to this line of questioning, and the court sustained the objection.

[¶ 29.] Lee claims the prosecutor attempted to solicit information that the court had previously ruled was inadmissible because it was highly prejudicial.[4] However, our review of the record shows

---

**4.** Lee had previously moved that all reference to burn marks be prohibited. He claimed that testimony regarding these marks would be highly prejudicial in that it would bring in evidence related to gang affiliation.

that the court's denial of the admission of similar evidence was based on its relevancy at that point in the trial. It informed the parties that State may have to recall witnesses, so that the evidence could later be admitted. The court, at no time, stated that the evidence was inadmissible because it was unfairly prejudicial. Moreover, we find that Lee's timely objection prevented Severson from completely answering the prosecutor's question. *See State v. Clabaugh*, 346 N.W.2d 448, 451 (S.D.1984). "Under the circumstances, the mere asking of the question did not constitute prejudicial or reversible error." *See State v. Olson*, 83 S.D. 260, 264, 158 N.W.2d 526, 528 (1968) (citation omitted).

*d. Prosecutor's comment that Lee murdered Walth prior to cooperating with investigators.*

[¶ 30.] The prosecutor questioned Agent Severson regarding Lee's cooperation with the investigation as follows:

PROSECUTOR: Agent Severson, the Defense was talking about the cooperation of David Lee that morning. Before this cooperation that he gave you didn't he also wash blood off himself?

SEVERSON: Yes, he did.

PROSECUTOR: And hide his clothes in another cell?

SEVERSON: Yes, he did.

PROSECUTOR: And murder a man?

SEVERSON: Yes, he did.

[¶ 31.] Lee objected to the question and the trial court admonished the jurors that they were to determine, after the court defined murder, whether the facts of the case fit the definition. Lee moved for a mistrial and the court denied the motion, stating that the prosecutor's statement was made rapidly and was not sufficiently prejudicial to warrant a mistrial.

[¶ 32.] We agree with the trial court and find that the court's admonitions prevented the jury from taking any improper inference from the prosecutor's comments. *See Davi*, 504 N.W.2d at 856. Lee has failed to show any actual prejudice and abuse of discretion by the trial court. *Stetter*, 513 N.W.2d at 90; *Davi*, 504 N.W.2d at 856.

*e. Prosecutor's opinion of the crime.*

[¶ 33.] During closing argument, the prosecutor referred to the number of different versions Lee provided concerning the events that occurred on September 9, 1997. He stated, "I don't care which story washes but I got my own idea of what I believed happened." Lee objected to this statement and the court, in sustaining the objection, stated, "[w]e don't care what your ideas are, it's the evidence."

[¶ 34.] We have previously expressed the "impropriety of a state's attorney expressing from personal knowledge his opinion as to the guilt of an accused." *State v. Wood*, 77 S.D. 120, 124, 86 N.W.2d 530, 532 (1957) (citation omitted). As the trial court properly stated to the jury, such opinion is not evidence in the case. *Id.* While the prosecutor's statement may have been improper, the trial court's admonition "served to curtail any improper inference the jury may have taken from the closing argument." *Davi*, 504 N.W.2d at 856. Therefore, we find the prosecutor's conduct did not reach the level of reversible error.

*f. Prosecutor's "Send a Message" argument.*

[¶ 35.] During the prosecutor's closing oral argument, he presented a continual showing of slides as a visual aide.[5] A number of slides contained the statement, "send a message to inmates."[6] When the first slide containing the "send a message" language was displayed, Lee ob-

---

**5.** When denying Lee's motion for mistrial, the trial court stated that the slides were used as visual aides to support the prosecutor's oral recitation. Nothing in the record indicates that the slides were used in any other manner.

**6.** The record is unclear as to the number of slides that contained the message. Lee claimed in his motion for mistrial that approximately six slides detailed the "send a message" argument.

jected and the trial court sustained the objection. From that point on, as the prosecutor forwarded through the remaining slides that included the inappropriate language, the court admonished the jury to look the other way or to consciously disregard it. The court informed the jury that "sending a message" was an inappropriate argument and that sending a message is not the purpose of a trial. It further admonished the jurors that "[w]e're here to determine whether the facts fit the law and you need to decide that. We don't send messages to people just to send a message."

[¶ 36.] Lee moved for a mistrial, and the trial court denied the motion. The court stated that, while the argument was inappropriate, it "was ... a miniscule part of the hour-long argument and ... was handled as well as [it] could be." The court also noted that most of the jurors turned away when instructed to do so. In addition, the court determined that the prosecutor's conduct was not sufficiently prejudicial to warrant a mistrial. We agree.

[¶ 37.] As this Court has previously stated, " '[t]he trial judge was on the scene, had heard the arguments and had the opportunity to note whether they had any apparent effect on the jury. He apparently [did not] feel that they had and we accede to his judgment lacking any showing on the part of the defense of actual bias or prejudice.' " *Stetter*, 513 N.W.2d at 90 (citation omitted). Accordingly, we find no error.

[¶ 38.] We have reviewed Lee's additional claims of prosecutorial misconduct and find them also to be without merit. As such, they need not be addressed.

[¶ 39.] Affirmed.

[¶ 40.] KONENKAMP and GILBERTSON, Justices, concur.

[¶ 41.] AMUNDSON, Justice, concurs in part and dissents in part.

[¶ 42.] SABERS, Justice, dissents.

AMUNDSON, Justice (concurring in part, dissenting in part).

[¶ 43.] I concur in issues one and two, but dissent on issue three (c, d, and f) regarding prosecutorial misconduct. I dissent for the same reasons as expressed in my dissent in *State v. Smith*, 1999 SD 83, 599 N.W.2d 344. Once again, I cannot agree with this "ritualistic verbal spanking" of the trial court sustaining objections after the bell was already rung by wholly inappropriate conduct of the prosecution. *See United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 661 (2d Cir.1946). I would reverse and remand for a trial without such objectionable misconduct and use of objectionable slides.

SABERS, Justice (dissenting).

[¶ 44.] I join Justice Amundson's dissent on issue three (c, d, and f). I would reverse and remand for a fair trial and not reach the other issues.