#24807-a-RWS

**2008 SD 112**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellee,

v.

KASEY L. ONKEN,                                           Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN J. DELANEY
Judge

* * * *

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                           Attorneys for plaintiff
                                               and appellee.

BRYAN T. ANDERSEN
Pennington County Public
 Defender's Office
Rapid City, South Dakota                       Attorneys for defendant
                                               and appellant.

* * * *

ARGUED OCTOBER 1, 2008

OPINION FILED **11/12/08**

#24807

SABERS, Justice.

[¶1.]     Kasey L. Onken was prosecuted for five counts of criminal pedophilia and, in the alternative, five counts of sexual contact with a child under sixteen. He was found guilty of one count of sexual contact with a child under sixteen. During trial, Onken questioned witnesses about V.B., a witness the defense believed did not exist, and discovered that V.B. does in fact exist. Onken requested a continuance for time to interview V.B. to gather potential exculpatory evidence in support of his defense. His request was denied. Onken appeals. We affirm.

## FACTS

[¶2.]     Onken and Heather Thomas began dating in 1996, and during the course of their relationship had two children: J.O., a daughter, was born August 14, 1997, and A.O., a son, was born May 14, 1999. Onken and Thomas's relationship ended in May 2000. J.O. and A.O. did not resume contact with Onken until August 2004, when Thomas's protection order against Onken expired.[1] Onken exercised visitation with J.O. and A.O. from August 2004 until December 3, 2004, at which time Thomas petitioned for another protection order against Onken.[2]

---

1.     Thomas said she allowed Onken to have visitation with J.O. and A.O. at this time because she was currently pregnant with her third child, fathered by her current boyfriend, and the children were asking questions about their own father. Further, Thomas testified that she was now a different person and thought Onken possibly was as well.

2.     The purpose for the protection order does not stem from the charges in this case, but rather from an argument Onken had with either J.O. or A.O., or both, the basis for which is unclear in the record.

-1-

[¶3.] During this August to December 3, 2004 timeframe, J.O. claims that on several occasions Onken came to where she was sleeping, took off her clothes, and forced her to have sexual intercourse with him. She explained that Onken "put his private part into her private part and sticky, white or yellow stuff would come out of his private part."

[¶4.] J.O. said that the first time Onken did this to her was the night before her seventh birthday, and he repeated the act during each visitation thereafter.[3] J.O. said Onken did this to her at least five times. A.O., J.O.'s then four-year-old brother, was present in the room during these occurrences and "woke up because the bed was moving" and "creaking." He stated that when he saw Onken's body "going up and down" on top of J.O., he "tried to push him off." A.O. testified that Onken would "finally [get] off" J.O. and leave the room. J.O. stated that the last time Onken did this to her was the weekend of December 3, 2004, which was the last time Onken had visitation with J.O. and A.O.

[¶5.] J.O. explained that V.B., a friend of hers from daycare, was the first person she told about what her father was doing to her.[4] V.B. told J.O. to tell her mother what her father was doing. J.O. told V.B. that she was scared to tell anyone

---

3. The dates visitation occurred is disputed.

4. J.O. told Lora Hawkins, the forensic interviewer, that V.B. was "in counseling," and it was later determined that this was for a "relationship between V.B. and an older person."

else.[5] J.O. said V.B. told her, "If you are scared to tell your mom, then just tell your brother to tell her."

[¶6.] On Thanksgiving Day 2005, Thomas, J.O., A.O., and Thomas's baby were traveling to Chamberlain to spend the holiday with Thomas's family. Thomas and A.O. were in the front of the car, while J.O. and the baby were in the back seat. Thomas testified that out of nowhere, A.O. said, "[Onken] had S-E-X with J.O." Thomas further explained that when she looked at J.O. in the rearview mirror, she saw J.O.'s facial expression and knew it was true.

[¶7.] The next day, Thomas called law enforcement to file a report. On November 30, 2005, J.O. was interviewed by Lora Hawkins, a forensic interviewer with Child Advocacy Center of the Black Hills at Black Hills Pediatrics in Rapid City. Hawkins followed an interview protocol approved by the National Children's Alliance to establish a comfort level with the child and set several ground rules for the interview.[6] She is also trained to "be aware of markers and indicators for when a child might have had planted ideas or some sort of contamination." During the interview, J.O. described the events that occurred during the August to December 3,

---

5.    J.O. said Onken warned her that if she reported this to anyone, he would hurt her. J.O. told Hawkins that Onken "said he would hurt me but I didn't know what he meant by hurting me or what he would do."

6.    Some of the standard rules include the following: (1) if the child does not know the answer to the question, she is to indicate so or that she does not remember, rather than fabricate an answer; (2) the child is advised that the same question may be asked more than once, not to test whether the child is lying, but rather to make sure the interviewer understands the given answer; (3) the child is told to correct the interviewer if anything is misstated; (4) the child is to notify the interviewer if a question is confusing; and (5) the child must commit to telling the truth.

2004, timeframe. J.O. disclosed that she had confided in her daycare friend V.B., and that V.B. was the "very first person she told what happened." Hawkins testified during a motions hearing that, in her interview, J.O. did not appear to have been coached by another individual.

[¶8.] On June 8, 2006, Onken was indicted for five counts of criminal pedophilia and, in the alternative, five counts of sexual contact with a child under sixteen. A Part II Information for Habitual Offender was also filed against Onken.[7] On May 15, 2007, Onken filed Defendant's First Motion for Discovery, requesting, among other things:

> 10. All statements considered by the prosecution to be relevant to the alleged crimes made by any person which would tend to incriminate or exculpate the defendant, whether reduced to writing or not;
>
> * * *
>
> 18. Any other evidence, statements, or materials known to the prosecution, including law enforcement officers or investigators, which is exculpatory in nature or favorable to the defendant or which may lead to exculpatory material or which aids in the preparation of the defense, including evidence relevant to guilt or innocence of said defendant not otherwise specifically requested by this motion.

Furthermore, on the same date Onken requested V.B.'s, as well as other individuals', Department of Social Services records. Although the trial court ordered the release of records belonging to the other individuals, it did not include

---

7. Onken had been convicted of Driving or Control of a Vehicle while under the Influence of Alcohol (Third Offense) on August 29, 2005.

V.B.'s records in its order.[8] Defense counsel was not provided with any information regarding V.B., other than what J.O. disclosed to Hawkins during the videotaped interview. In fact, defense counsel indicated the State gave him the impression that V.B. did not exist.[9]

[¶9.]    A two-day jury trial was conducted for the charges of criminal pedophilia and sexual contact with a child under sixteen. During the trial, the defense questioned three of the State's witnesses about V.B. However, the substance of the witnesses' answers did not amount to much more than the fact that V.B. was a real person with whom J.O. was friends.

[¶10.]    At the close of the State's case-in-chief, defense counsel argued that the State violated the discovery request by failing to provide any information regarding V.B. The court directed the State to provide defense counsel with an address for V.B., but instructed defense counsel that if he was going to interview V.B., he needed "to do it between now and dawn."

[¶11.]    On the second day of trial, the court inquired whether defense counsel interviewed V.B. Defense counsel acknowledged that the State provided V.B.'s phone number, but that defense counsel did not contact V.B. because it was 5:30 P.M., his staff was gone, and he "wasn't going to make a phone call like that to a

---

8.    The trial court did not explicitly deny the request for V.B.'s records either; it just did not include her records in the order.

9.    In response to this claim, the State responded, "I don't recall saying that [V.B.] doesn't exist."

girl that had possibly been molested."[10] When the court asked defense counsel what relief he was looking for, he replied, "A continuance now that we know where [V.B.] is to make inquiries of her."[11] The court denied the request for a continuance and resumed the trial.

[¶12.] At the close of evidence, the court allowed defense counsel to review V.B.'s DSS records for fifteen minutes.[12] The court said it would reconsider the request for a continuance depending on the information found in the records. After providing this opportunity, the court decided that although there may have been some information in V.B.'s DSS records helpful to Onken's case, it was not going to grant a continuance.

[¶13.] Ultimately, the jury found Onken guilty of one count of sexual contact with a child under sixteen, and acquitted him of all other charges. Moreover, Onken was found guilty of being a habitual offender at his January 25, 2008 court trial for the Part II Information. On January 28, 2008, Onken was sentenced to

---

10. Defense counsel indicated he made a request for information regarding [V.B.] at the May 21, motion hearing. Upon review of that transcript, we find no mention of [V.B.]. There is discussion of the court doing an in-camera review of the DSS records, but it is not specific to which records the parties and the court are referring. Regardless, as mentioned earlier, the court's order to release certain DSS records never included V.B.'s records.

11. Defense counsel never specifically requested a mistrial.

12. Defense counsel revealed that he had V.B.'s records in his office throughout the length of this case because his office had represented a party in an abuse and neglect matter with which V.B. was involved.

fifteen years in the South Dakota State Penitentiary, six of which were suspended.

Onken appeals the denial of a continuance to this Court.[13]

## STANDARD OF REVIEW

[¶14.]    Our standard of review is well established:

> "An abuse of discretion occurs when 'discretion [is] exercised to
> an end or purpose not justified by, and clearly against, reason
> and evidence.'" *In re* L.M.G., 2007 SD 83, ¶6, 738 NW2d 71, 73-
> 74 quoting Miller v. Jacobsen, 2006 SD 33, ¶18, 714 NW2d 69,
> 76.  The test for an abuse of discretion is not whether we would
> reach the same result, but rather, "whether we believe a judicial
> mind, in view of the law and the circumstances, could
> reasonably have reached that conclusion."  State v. Crawford,
> 2007 SD 20, ¶13, 729 NW2d 346, 349 quoting Huber v. Dep't of
> Pub. Safety, 2006 SD 96, ¶22, 724 NW2d 175, 180.

State ex rel. White v. Brandt, 2008 SD 33, ¶11, 748 NW2d 766, 770.

[¶15.]    **Whether the trial court abused its discretion by denying a
continuance to allow Onken time to interview V.B. to gather
potential exculpatory evidence in support of his defense.**

[¶16.]    Onken argues that the State's failure to provide information regarding

V.B. was a violation of the discovery order, and furthermore, that the court's denial

of a continuance for Onken to gather information from and about this witness was

an abuse of discretion.  The defense indicates that information regarding V.B. is

important because V.B. had also asserted sexual molestation allegations against an

adult.  In the defense's opinion, V.B. may have imputed her knowledge regarding

her personal experiences to J.O., and therefore, assisted J.O. in forming the

---

13.    On appeal, Onken claims that the trial court erred "in denying [his] request
for a mistrial or continuance . . . ."  As stated before, Onken never requested a
mistrial; he only requested a continuance.

allegations against Onken. Onken provides no basis for this conclusion other than his "opinion."

[¶17.]    In considering whether the trial court abused its discretion in denying Onken's continuance request, the intrinsic issue of whether there was a discovery order violation must first be determined. SDCL 23A-13-17 (FedRCrimP 16(d)(2)) provides:

> If, at any time during the course of a proceeding, it is brought to the attention of a court that a party has failed to comply with an applicable discovery provision, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place, and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

[¶18.]    "'[T]he remedy for nondisclosure of discoverable material is left to the sound discretion of the trial court.'" State v. Guthrie, 2002 SD 138, ¶7, 654 NW2d 201, 204 (quoting State v. Hofman, 1997 SD 51, ¶17, 562 NW2d 898, 903 (quoting State v. Oster, 495 NW2d 305, 309 (SD 1993) (internal quotations omitted))). "[N]ot every failure to produce evidence as ordered is, without more, prejudicial error." State v. McKee, 314 NW2d 866, 867 (SD 1982) (citations omitted).

[¶19.]    In his brief, Onken rests on the conclusory proposition that,

> The trial court clearly abused its discretion in holding that the violation of the discovery order was harmless because Onken was not afforded time to have V.B. forensically interviewed. . . . [S]howing up on a child's doorstep at 5:30 in the evening and asking her to disclose any sex acts would have not been appropriate.

Onken cites no authority to support his claim of abuse. Furthermore, the record indicates that Onken, well before trial, learned of V.B.'s existence from the

videotape of Hawkin's interview. Testimony regarding V.B. was not a surprise to Onken. As a caution, however, the trial court allowed Onken to review V.B.'s DSS files while the jury was deliberating. This was done in accordance with SDCL 23A-13-17, in which the "time, place, and manner of making the discovery and inspection" were specified by the court. After providing this opportunity, the court acknowledged that "it is possible that there may be some information [in V.B.'s DSS records] helpful in terms of the theory of defense of the case[.]" Ultimately, the court found no discovery violation.

[¶20.]     The facts support this conclusion. Although we recognize that Onken may not have been prepared for J.O.'s testimony that V.B. existed, he did cross-examine three witnesses about V.B., and moreover, had possession of the videotape well before trial. Furthermore, the facts do not support Onken's defense that V.B. imputed her knowledge to J.O. Hawkins testified that based on her training, J.O.'s answers were not indicative of coaching. Additionally, it was A.O., not J.O., who revealed to Thomas what Onken did to J.O. In light of the standard of review, the fact that the trial court "may enter such order as it deems just under the circumstances[,]" and because Onken has not specifically shown how the testimony prejudiced his case, there is no showing of abuse of discretion in this finding.

[¶21.]     Next, we consider whether the denial of a continuance was an abuse of discretion. "A trial may be postponed 'upon good cause shown.'" State v. Lang, 354 NW2d 723, 724 (SD 1984) (quoting SDCL 15-11-4). Similar to the determination of a discovery violation, "[t]he granting of a continuance is within the sound discretion

of the trial court and its rulings will not be disturbed absent a clear showing of abuse of discretion." *Id.* (citing State v. Rosales, 302 NW2d 804 (SD 1981)).

[¶22.] In *State v. Hagan*, 1999 SD 119, 600 NW2d 561, the State failed to provide the defense with inculpatory statements made by the defendant within the agreed time limits. Rather, the defense was notified of some of these statements five days before trial, other statements were provided the day before trial, and notice for even more statements was given the day of trial. After the defense's oral motions in limine and for a continuance were denied, the statements were admitted in the State's case-in-chief. Two of the three witnesses who provided this information to the State were previously unknown to the State, and as soon as the inculpatory statements were disclosed, the State immediately notified the defense. The defense, however, had the name of the third witness, as well as a summary of his allegations, almost two months prior to trial. On appeal to this Court, we held that based on these facts, the denial of a continuance was not an abuse of discretion. *Id.* ¶21, 600 NW2d at 566. Here, Onken had knowledge of V.B. prior to trial because he had possession of a copy of the videotape and had ample time to pursue that lead if he so desired. The court did not abuse its discretion by denying the motion for a continuance.

[¶23.] Similarly, in *Hofman*, 1997 SD 51, ¶¶15-17, 562 NW2d at 902-03, the defense argued that the State's expert's failure to include knife measurements in his report was a violation of the discovery order. In allowing the testimony, court noted that the defense was aware that the "knife was probably going to be focused on and the knife was available for the defense to look at and have its expert

examine it[.]" *Id.* ¶17, 562 NW2d at 902. On appeal, this Court held that the trial court did not abuse its discretion. Although in *Hofman* the evidence was a knife as opposed to the testimony of a witness, the cases are analogous. Onken knew V.B. potentially existed, knew V.B. was integral to his defense theory, and could have had V.B. examined prior to trial. Onken, however, did not pursue this before trial began, and now is claiming the circuit abused its discretion by not granting a continuance. We disagree. There was no showing that the trial court abused its discretion by denying Onken's motion for continuance. Affirmed.

[¶24.]        GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.