#28734-a-SRJ
**2019 S.D. 40**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| STATE OF SOUTH DAKOTA, | Plaintiff and Appellee, |
| v. | |
| TERRY MICHAEL MCMILLEN, | Defendant and Appellant. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BRADLEY G. ZELL
Judge

THE HONORABLE LAWRENCE E. LONG
Retired Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

GRANT FLYNN
Assistant Attorney General
Pierre, South Dakota

Attorneys for plaintiff
and appellee.


BEAU BLOUIN of
Minnehaha County Public
    Defender's Office
Sioux Falls, South Dakota

Attorneys for defendant and
appellant.

\* \* \* \*

CONSIDERED ON BRIEFS ON
MARCH 25, 2019
OPINION FILED **07/10/19**

#28734

JENSEN, Justice

[¶1.] Terry Michael McMillen was convicted of four counts of rape in the fourth degree, one count of sexual exploitation of a minor, one count of solicitation of a minor, and a misdemeanor count of enticing a child away. McMillen claims, for the first time on appeal, that his sentences for sexual exploitation of a minor and solicitation of a minor violated the Double Jeopardy Clause of the Fifth Amendment because his convictions arose from the same conduct as the rape convictions. McMillen also requests a new trial, arguing—again for the first time on appeal— that the State engaged in prosecutorial misconduct by asking about similarities between his step-daughter and the victim during his cross-examination. We review both issues for plain error and affirm.

**Facts and Procedural History**

[¶2.] In the summer of 2012, McMillen met T.J.L. at a birthday party. At the time, McMillen was thirty-seven years old and T.J.L. was fifteen years old. After the birthday party, McMillen, T.J.L., and others went to another home where McMillen and T.J.L. engaged in casual conversation. The next day, McMillen sent T.J.L. a private message over Facebook, and the two began periodically messaging each other. Later, they exchanged cell phone numbers and began occasionally text messaging each other and conversing by phone from time to time.

[¶3.] In the early fall of 2012, McMillen twice sent text messages to T.J.L. during the school day, asking if she wanted to skip school to "hang out." The first time, T.J.L. agreed and met McMillen at a pre-arranged location, a couple of blocks from the school. McMillen then drove T.J.L. to his apartment where the two talked

-1-

before McMillen drove her back to school. On the second occasion, McMillen picked up T.J.L. during the school day and drove her to his apartment. T.J.L. claimed McMillen took off her coat and started to kiss her after entering his apartment. McMillen and T.J.L. then went to his bedroom and they began undressing one another. While in the bedroom, T.J.L. testified McMillen initially penetrated her vagina with his fingers before he penetrated her vagina with a rubber sex toy. She also testified that McMillen then performed oral sex on her and she subsequently performed oral sex on McMillen. The sexual activity ended when T.J.L. told McMillen she no longer wanted to continue. T.J.L. testified that after the sexual activity, McMillen showed her how to clean off the sex toy so his girlfriend would not know it had been used.[1]

[¶4.]     At trial, McMillen admitted he had messaged T.J.L. via Facebook and text. McMillen also admitted that he and T.J.L. spoke occasionally by phone. He claimed there was nothing sexual in their communications and denied any physical relationship with T.J.L. McMillen also denied T.J.L. had been to his apartment and claimed that she was only able to describe his apartment and his truck due to publicly shared images on his Facebook page. These images were introduced as evidence at trial.

---

1.     McMillen married his girlfriend prior to the trial. McMillen's spouse has a daughter approximately the same age as T.J.L.

[¶5.]     Images of Facebook messages between McMillen and T.J.L., sent months after the alleged rape, were introduced as evidence at trial.[2]  None of these messages contained any discussion or suggestion of a sexual relationship.  T.J.L. testified that she asked McMillen if the communications between the two of them were "weird."  She also testified that she apologized to McMillen for "intruding" after McMillen expressed that he did not want his girlfriend to discover their communications.

[¶6.]     In January 2014, T.J.L. confided to a friend about the sexual encounter with McMillen.  T.J.L. testified that her friend then messaged McMillen through T.J.L.'s Facebook account accusing him of "messing around with a 15 year old[.]"  An image of this message was introduced into evidence.  McMillen admitted to receiving the message but did not reply to it.  T.J.L. testified that she was convinced by her friend to tell her parents about the sexual encounter with McMillen, and her parents then reported the incident to law enforcement.

[¶7.]     At trial, the two investigating officers testified that T.J.L. gave both officers separate detailed statements about her encounter with McMillen and a description of his apartment and the truck he drove.  T.J.L.'s statements to both officers were consistent.  One of the officers indicated T.J.L. was hesitant to report the alleged incident.  McMillen's counsel suggested during cross-examination that the officer had compelled T.J.L. to report the crime against her will.

---

2.     These Facebook messages were exchanged between June 2013 and January 2014.  At trial, an investigating officer testified that T.J.L. told her she no longer had the messages exchanged prior to those dates, and that she may have deleted them after the encounter.

[¶8.]       McMillen testified in his defense and denied all the charges against him. During the State's cross-examination of McMillen, the following exchange took place:

| | |
|---|---|
| **[Prosecutor]:** | Okay. You have a step-daughter; right? |
| **[McMillen]:** | I do. |
| **[Prosecutor]:** | How old? |
| **[McMillen]:** | 14, I believe. |
| **[Prosecutor]:** | What does she look like? |
| **[McMillen]:** | She's about the same height of her mother, about the same size as her mother, and she wears glasses. |
| **[Prosecutor]:** | Dark hair? |
| **[McMillen]:** | Dark hair. |
| **[Prosecutor]:** | Darker complected[sic]? |
| **[McMillen]:** | Darker complected[sic]. |
| **[Prosecutor]:** | 13, 14 years old? |
| **[McMillen]:** | 13, 14 years old. |
| **[Prosecutor]:** | A lot like [T.J.L.]? |
| **[McMillen]:** | What do you mean a lot like [T.J.L.]? |
| **[Prosecutor]:** | [T.J.L.]'s got dark hair, dark complexion, 13 or 14 years old when you met her? Does your step-daughter look similar? |
| **[McMillen]:** | She's taller than my step-daughter. |

McMillen's counsel did not object or take any other action with respect to these questions.

[¶9.]       During closing arguments, the State explained the elements of sexual exploitation of a minor and the State's burden "to prove [the elements] beyond a reasonable doubt." The State then asked the jury to consider McMillen's conduct in the bedroom as proof of sexual exploitation. In discussing the solicitation charge, the State told the jury to consider "the same evidence we looked at [for rape in the fourth degree] before" and "the communications they had."

[¶10.]       The jury found McMillen guilty on all counts. McMillen was sentenced to fifteen years with five years suspended on the fourth-degree rape conviction in

count one. The court imposed three fifteen-year, suspended sentences on the other fourth-degree rape convictions, ordering each to be served concurrently. The court imposed a two-year, suspended sentence on the sexual exploitation of a minor conviction and a ten-year, suspended sentence on the solicitation of a minor conviction. Both sentences were imposed consecutively. McMillen did not raise a double jeopardy challenge to the convictions or sentences for sexual exploitation of a minor or solicitation of a minor before the circuit court.

[¶11.]     McMillen did not appeal his convictions, but later petitioned for a writ of habeas corpus arguing ineffective assistance of counsel. The habeas court partially granted the petition finding that McMillen had not been properly advised of his appeal rights. The habeas court remedied this error by re-imposing the prior sentences and entering a new judgment on each conviction.[3] The habeas court did not address McMillen's other ineffective assistance of counsel claims. McMillen then filed this direct appeal following the entry of the new judgment of conviction.[4]

[¶12.]     McMillen raises two issues on appeal that we address as follows:

1.     Whether, on plain error review, McMillen's sentences for sexual exploitation of a minor and solicitation of a minor violated his Fifth Amendment right against double punishment.

2.     Whether, on plain error review, the State engaged in prosecutorial misconduct, warranting a new trial.

---

3.     Second Circuit Judge Bradley G. Zell presided over McMillen's trial and imposed the sentences on each of McMillen's convictions following the trial. Second Circuit Judge Lawrence E. Long presided over the subsequent habeas proceeding and then entered the new judgment of conviction imposing the same sentences originally imposed by Judge Zell.

4.     McMillen was appointed different counsel for this appeal.

## Standard of Review

[¶13.]      Because McMillen failed to preserve error on either of the issues he raises on appeal, we review both for plain error. *State v. Schrempp*, 2016 S.D. 79, ¶ 13, 887 N.W.2d 744, 748; *see also* SDCL 23A-44-15 (Rule 52(b)). "We invoke *our discretion* under the plain error rule cautiously and only in '*exceptional circumstances*.'" *State v. Bariteau*, 2016 S.D. 57, ¶ 23, 884 N.W.2d 169, 173 (emphasis added) (quoting *State v. Fischer*, 2016 S.D. 1, ¶ 15, 873 N.W.2d 681, 687). "To establish plain error, an appellant must show '(1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if, (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *State v. Bausch*, 2017 S.D. 1, ¶ 27, 889 N.W.2d 404, 412 (quoting *State v. Buchhold*, 2007 S.D. 15, ¶ 22, 727 N.W.2d 816, 822). "Additionally, 'with plain error analysis, the defendant bears the burden of showing the error was prejudicial.'" *Id.* (quoting *State v. Beck*, 2010 S.D. 52, ¶ 10, 785 N.W.2d 288, 293).

## Analysis & Decision

> 1.     *Whether, on plain error review, McMillen's sentences for sexual exploitation of a minor and solicitation of a minor violated his Fifth Amendment right against double punishment.*

[¶14.]      Our jurisprudence and analytical method for double jeopardy is well established:

> [t]he double jeopardy prohibition in the Fifth Amendment to the United States Constitution, and Article VI, Section 9, of the South Dakota Constitution, "protects against three types of governmental abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same

> offense after conviction; and *(3) multiple punishments for the same offense."*

*State v. Garza*, 2014 S.D. 67, ¶ 10, 854 N.W.2d 833, 837 (emphasis added) (quoting *State v. Johnson*, 2007 S.D. 86, ¶ 12, 739 N.W.2d 1, 6).

[¶15.]     McMillen argues his sentences for sexual exploitation of a minor and solicitation of a minor impose improper multiple punishments because the convictions were based on the same conduct the State used to prove the fourth-degree rape convictions.  The State responds that the crimes of sexual exploitation of a minor and the solicitation of a minor require proof of a fact or element that is different than the crime of fourth-degree rape, and McMillen has not shown plain error on this record.  The State also argues that evidence of McMillen's communications with T.J.L. prior to the sexual encounter support the conviction for solicitation of a minor and constitute separate conduct from the evidence supporting the rape convictions.

[¶16.]     We agree with the State that McMillen has failed to show error as to the solicitation conviction because there was sufficient evidence of separate conduct to support the conviction for solicitation of a minor.  For the specter of a double jeopardy violation to arise, the prosecution must involve "the same act and crime, both in law *and in fact*, upon which the first prosecution was based." *State v. Thomason*, 2015 S.D. 90, ¶ 25, 872 N.W.2d 70, 77 (emphasis added) (quoting *State v. Pickering*, 88 S.D. 548, 225 N.W.2d 98, 100 (1975)).  This Court has explained that when multiple convictions under the same statute are "isolated transactions, rather than one continuous transaction[,]" double jeopardy is not an issue. *State v.*

*Augustine*, 2000 S.D. 93, ¶ 15, 614 N.W.2d 796, 798; *see also Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932).

[¶17.]    The evidence was undisputed that McMillen first initiated contact with T.J.L. through Facebook.  McMillen and T.J.L. continued to communicate for a few months before the sexual encounter.  Some of these communications were late at night.  McMillen twice initiated contact with T.J.L. by asking her to skip school and meet him.  After the second communication, McMillen picked up T.J.L. and drove her to his apartment before engaging in the sexual encounters with T.J.L.  These communications, before the sexual encounters with T.J.L., were sufficient to support a conviction under SDCL 22-24A-5(1)[5] for solicitation of a minor.  Nothing in SDCL 22-24A-5(1) requires the act of solicitation to explicitly include a sexual reference or a request for sex.  The jury could have inferred that one or more of the communications from McMillen to T.J.L. were solicitations to engage in the sex acts that occurred at his apartment.  *See Hartley v. State*, 129 So. 3d 486, 489-90 (Fla. Dist. Ct. App. 2014) (holding that appellant's text exchanges with minor victim while not explicitly sexual were close enough in time to sexually explicit messages and the sexual act itself that a jury could reasonably infer the messages were part of a plan to "seduce, solicit, lure, and entice" the minor victim).

---

5.    SDCL 22-24A-5(1) provides,

> A person is guilty of solicitation of a minor if the person eighteen years of age or older:
> > (1) Solicits a minor, or someone the person reasonably believes is a minor, to engage in a prohibited sexual act . . . .

[¶18.]     As to sexual exploitation, the State argues that even if the sexual exploitation and rape convictions arise from McMillen's actions at the apartment, the consecutive sentences do not violate double jeopardy because the crimes "'require [] proof of a fact which the other does not'" under the *Blockburger* analysis. *See Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182. We apply a two-part analysis from *Blockburger* to determine whether the convictions arising from the same conduct constitute an improper double punishment. First, we determine if the Legislature clearly expressed an intent for the multiple punishments to be imposed on the same conduct. *Garza,* 2014 S.D. 67, ¶ 12, 854 N.W.2d at 837-38. Second, if we are unable to determine a clear legislative intention to impose multiple punishment for the same conduct, "we ask 'whether each provision requires proof of an additional fact which the other does not.'" *Id.* ¶ 13, 854 N.W.2d at 838 (quoting *State v. Deneui*, 2009 S.D. 99, ¶ 65, 775 N.W.2d 221, 248). In other words, "[t]wo offenses may be said to have occurred only if each statute requires proof of an additional fact which the other does not." *Id.* (quoting *State v. Hoffman*, 430 N.W.2d 910, 911 (S.D. 1988)). In applying the *Blockburger* test*,* we have stated that when ascertaining the intent behind South Dakota law, "we part ways with the federal analysis to the extent that we examine 'only the statutory elements comprising the offenses without regard to how the offenses were charged, how the jury was instructed, or how the underlying proof for the necessary elements was established.'" *Id.*

[¶19.]     McMillen argues the circuit court committed error because the proof of "sexual penetration" of a child under the age of sixteen for fourth-degree rape

necessarily proves "activity that is harmful to a minor" under the sexual exploitation statute.[6] He argues that the elements of the two crimes are essentially the same because both statutes effectively criminalize harmful sexual behavior with a minor under the age of sixteen.

[¶20.] To support his argument, McMillen relies on *State v. Dillon*, 2001 S.D. 97, ¶ 18, 632 N.W.2d 37, 44, where we reviewed a double jeopardy issue for plain error. In *Dillon*, we vacated three convictions for first-degree rape where the defendant had also been convicted of three counts of criminal pedophilia arising from the same three acts of sexual penetration involving three children. *Dillon* acknowledged that "the *Blockburger* test is imperfect and cannot elucidate legislative intent in every instance." *Id.* McMillen asks that we apply the rule of lenity from *Dillion* to the crimes of fourth-degree rape and sexual exploitation because it cannot "be declared with certitude that each offense requires proof of an element the other does not." *See, id.* ¶ 21, 632 N.W.2d at 46 (quoting *Staples v. United States*, 511 U.S. 600, 619, 114 S. Ct. 1793, 1804, 128 L. Ed. 2d 608 (1994)).

---

5. Case law supports McMillen's claim that an act of sexual penetration is harmful to a minor. *See Buchhold*, 2007 S.D. 15, ¶ 40, 727 N.W.2d at 826 (acknowledging that the eleven year old victim's rape and sexual abuse over a four year period "likely resulted in irreparable emotional harm . . ."). Relatedly, the aims of statutory rape laws, at least in part, are to protect minors from potential harm. *See United States v. Asberry*, 394 F.3d 712, 718 n.6 (9th Cir. 2005) ("statutory rape is a serious crime, in part to protect children and teenagers . . . from the serious potential risk of physical injury inherent in sexual relations between youths and adults"); *Owens v. Maryland*, 724 A.2d 43, 52, (Md. 1999) ("The case law testing the constitutionality of strict liability statutory rape laws is unanimous in recognizing the significance of the potential harm caused by sexual activity involving children, even with their consent."); *Collins v. State*, 691 So. 2d 918, 924 (Miss. 1997).

[¶21.]     However, McMillen's reliance on *Dillon* is misplaced. *Dillion* addressed three single acts of sexual penetration with children that resulted in convictions under two statutes criminalizing sexual penetration with a child. Here, there were multiple acts by McMillen in his apartment, aside from the four acts of sexual penetration, that may fall under the definition of harmful activity to a minor. As we recently recognized in *State v. Livingood*, 2018 S.D. 83, ¶ 37, 921 N.W.2d 492, 500, the language "harmful to a minor" in the sexual exploitation statute may involve a broad range of sexual activity or simulation of such activity that does not involve sexual penetration.

[¶22.]     Additionally, the criminal statutes at issue in *Dillon* specifically included an act of sexual penetration of a minor as an element of both offenses. Here, sexual penetration is not an element of both offenses. Fourth-degree rape requires an act of sexual penetration, a victim under the age of sixteen, and a perpetrator at least three years older than the victim. In contrast, the crime of exploitation of a minor requires a victim under the age of eighteen and proof of an activity that is harmful to a minor. Therefore, under a strict application of the *Blockburger* test, the elements of fourth-degree rape and sexual exploitation of a minor are different.

[¶23.]     Even if we were to agree with McMillen and conclude that the conviction and consecutive sentence for sexual exploitation of a minor was error, such error was not plain on this record. An error is "plain" when it is clear or obvious. *See United States v. Roy*, 408 F.3d 484, 495 (8th Cir. 2005) (quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777-78, 123 L. Ed. 2d 508

(1993)). "[Plain error]'s requirement that an error be 'plain' means that lower court decisions that are questionable but not *plainly* wrong (at time of trial or at time of appeal) fall outside the Rule's scope." *Henderson v. United States*, 568 U.S. 266, 278, 133 S. Ct. 1121, 1130, 185 L. Ed. 2d 85 (2013); *see also United States v. Pazour*, 609 F.3d 950, 954 (8th Cir. 2010) (per curiam) (declining to apply plain error review after a search of pertinent authorities failed to support defendant's claim of plain error); *United States v. Watson*, 843 F.3d 335, 337 (8th Cir. 2016) (holding there can be no plain error to review when "neither the Supreme Court nor this [c]ourt" had resolved the issue "beyond debate"). *See United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015) ("In considering whether an error is 'clear or obvious' . . . we must decide whether controlling circuit or Supreme Court precedent has reached the issue in question, or whether the legal question would be subject to 'reasonable dispute.'").

[¶24.] This Court has not previously considered or discussed whether the element of sexual penetration of a child for fourth-degree rape is the same as the element of activity that is harmful to a minor under the sexual exploitation statute. Moreover, to find plain error, we would have to conclude that it was clear and obvious on this record, without any objection from McMillen, that there was no separate conduct which would support a conviction for sexual exploitation of a minor. Given the facts at trial and the differences in the elements of fourth-degree rape and sexual exploitation, we cannot say that any error was plain.

[¶25.] "Not every error that occurs during trial constitutes plain error; therefore[,] the plain error analysis 'must be applied cautiously and only in

exceptional circumstances.'" *State v. Hayes*, 2014 S.D. 72, ¶ 25, 855 N.W.2d 668, 675 (quoting *Beck,* 2010 S.D. 52, ¶ 10, 785 N.W.2d at 293). "[Plain error] is permissive, not mandatory. If the forfeited error is 'plain' and 'affects substantial rights,' the court of appeals has authority to order correction but is not required to do so." *Olano*, 507 U.S. at 735, 113 S. Ct. at 1778. Because we conclude that any error in conviction and sentence for sexual exploitation of a minor was not plain, we deny McMillen's request to reverse the conviction.

> 2.      *Whether, on plain error review, the State engaged in prosecutorial misconduct, warranting a new trial.*

[¶26.]      McMillen argues he should be granted a new trial because the State engaged in prosecutorial misconduct by inquiring about the similar ages and physical appearances of his step-daughter and T.J.L. during his cross-examination. McMillen asserts this line of questioning was an improper "community conscience" argument[7] that violated his right to a fair trial. According to McMillen, the State's questions were intended to persuade the jury that he posed a threat to his step-daughter's safety if the jury found him not guilty. The State claims McMillen has failed to show plain error or that he was prejudiced by the questions posed by the State.

---

7.      Community conscience arguments ask the jury to place themselves in the shoes of the victim or make an appeal to the jury to protect the community. *See State v. Stetter*, 513 N.W.2d 87, 89-90 (S.D. 1994); *State v. Janklow*, 2005 S.D. 25, ¶ 46, 693 N.W.2d 685, 700-01. This Court has routinely condemned and expressed a distaste for this type of argument. *See, e.g., Janklow*, 2005 S.D. 25, ¶ 46, 693 N.W.2d at 700 ("Community conscience arguments are improper." (quoting *Stetter*, 513 N.W.2d at 90)).

[¶27.] "We have held prosecutorial misconduct to be a 'dishonest act or an attempt to persuade the jury by the use of deception or by reprehensible methods.'" *State v. Janis*, 2016 S.D. 43, ¶ 22, 880 N.W.2d 76, 82 (quoting *Hayes*, 2014 S.D. 72, ¶ 23, 855 N.W.2d at 675). "[N]o hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts." *State v. Stetter*, 513 N.W.2d 87, 90 (S.D. 1994) (quoting *State v. Kidd*, 286 N.W.2d 120, 121-22 (S.D. 1979)). "'A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone,' but, if the prosecutor's conduct affects the fairness of the trial when viewed in context of the entire proceeding, reversal can be warranted." *Id.* (quoting *United States v. Young*, 470 U.S. 1, 11, 105 S. Ct. 1038, 1044, 84 L. Ed. 2d 1 (1985)).

[¶28.] Here, the line of questioning by the State was improper. The State's questions were not relevant to the proceedings. Further, the questions arose without any prompting during McMillen's direct examination or from any of his answers during cross-examination. There appears to have been no purpose for these questions other than to suggest McMillen presented a similar risk to his step-daughter. However, because McMillen failed to object to the questions, move to strike the testimony, or move for a mistrial, the circuit court was not given an opportunity to strike the testimony, consider the impact of this testimony on the jury, or otherwise apply its discretion to consider whether a mistrial or other lesser remedy was appropriate. *See State v. Kryger,* 2018 S.D. 13, ¶ 33, 907 N.W.2d 800, 812.

[¶29.]     The third prong for plain error review imposes on McMillen "the burden of showing that the error affected [his] substantial rights, which 'means [he] must demonstrate that it affected the outcome of the [circuit] court proceeding.'" *Beck*, 2010 S.D. 52, ¶ 17, 785 N.W.2d at 294; (quoting *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429, 173 L. Ed. 2d 266 (2009)). McMillen has failed to identify any specific prejudice arising from the State's questions.[8] The questioning was brief and only occurred during cross-examination of McMillen. The State did not otherwise argue or suggest that McMillen represented a danger to the community, and the comparisons to his step-daughter were not mentioned again. Further, there was substantial evidence to support McMillen's convictions on all the charges. Although much of the evidence came from T.J.L., there was evidence corroborating her testimony. The State is admonished for this line of questioning, but McMillen has not shown the State's improper cross-examination affected his substantial rights.

[¶30.]     We affirm McMillen's convictions.

[¶31.]     GILBERTSON, Chief Justice, KERN and SALTER, Justices, and SEVERSON, Retired Justice, concur.

---

7.     Because McMillen has failed to show prejudice, it is unnecessary to address the fourth prong for plain error review, requiring that the error must "seriously affect the fairness, integrity, or public reputation of the judicial proceedings[.]" *Bausch*, 2017 S.D. 1, ¶ 27, 889 N.W.2d at 412 (quoting *Buchhold*, 2007 S.D. 15, ¶ 22, 727 N.W.2d at 822). "This final prong of plain-error review is formidable and requires a showing of more than simple prejudice." *United States v. Poitra*, 648 F.3d 884, 889 (8th Cir. 2011).