#29801-a-SPM
**2022 S.D. 67**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

NATHAN HANKINS,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ERIC J. STRAWN
Judge

\* \* \* \*

JOHN R. MURPHY
Rapid City, South Dakota                    Attorney for defendant
    and appellant.


MARK VARGO
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
    and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MAY 25, 2022
OPINION FILED **11/02/22**

#29801

MYREN, Justice

[¶1.]    A Lawrence County grand jury indicted Nathan Hankins on two counts of first-degree rape and two alternative counts of sexual contact with a minor under 16 with his half-sister, R.H.  A jury convicted Hankins of two counts of first-degree rape.  Hankins appeals, asserting that his due process rights were violated due to an insufficient arraignment, that the court abused its discretion in admitting testimony from certain witnesses, and that the State engaged in prosecutorial misconduct.  We affirm.

## Facts and Procedural History

[¶2.]    In October 2019, R.H. told her mother, Patricia Hankins (Patricia), that Hankins had touched her privates.  On November 4, 2019, R.H. participated in a forensic interview with Monica Eaton-Harris.  In the interview, R.H. stated that Hankins touched and kissed her vagina using his hand, mouth, and tongue.

[¶3.]    On December 18, 2019, a Lawrence County grand jury indicted Hankins for the first-degree rape of a child under 13 by digital penetration under SDCL 22-22-1(1) and SDCL 22-22-1.2(1) or, alternatively, sexual contact with a minor under age 16 under SDCL 22-22-7.  The grand jury also indicted Hankins for first-degree rape of a child under 13 by cunnilingus under SDCL 22-22-1(1) and SDCL 22-22-1.2(1) or, alternatively, sexual contact with a minor under 16 under SDCL 22-22-7.  On January 28, 2020, the State filed a part II information that alleged Hankins was previously convicted of first-degree rape under SDCL 22-22-1(5) on August 19, 2004.

-1-

[¶4.] The circuit court held Hankins's arraignment hearing on February 11, 2020. The circuit court advised all defendants appearing on that date of their statutory and constitutional rights. When the circuit court addressed Hankins and asked him if he understood his rights, Hankins answered affirmatively. He then waived his right to have the indictment read to him. The circuit court explained the charges against Hankins, their maximum sentences, and their mandatory minimums. The circuit court also informed Hankins of the part II information, the allegations contained therein, and the potential consequences. Hankins pled not guilty and denied the part II information.

[¶5.] A three-day jury trial began on May 18, 2021. The State's first witness was Dr. Cara Hamilton, who examined R.H. on November 7, 2019. During Dr. Hamilton's testimony, the following occurred:

| | |
|---|---|
| State: | In the practice of medicine, is there a term called a history? |
| Dr. Hamilton: | Yes. |
| State: | What does that mean in medicine? |
| Dr. Hamilton: | While taking a history, I spend some time gathering information about my patient and learning about their chief complaint -- another medical term -- which is the reason they presented to medical care that day. Also taking a history would involve getting medical background; medical history; social history, where the patient lives; any family history that's pertinent as well. |
| State: | All right, Doctor. Did you learn in that history what had happened? |
| Dr. Hamilton: | Yes. |
| State: | What had happened? |
| Dr. Hamilton: | So most of my information actually came from Monica, the interviewer, and that was by design that I wouldn't have to rehash the details with [R.H.] herself. But I learned -- |
| Hankins: | Objection, Your Honor. At this point it's hearsay. |
| Court: | Sustained. |

| | |
|---|---|
| State: | Did you learn when this event had taken place? |
| Hankins: | Objection. Hearsay, Your Honor. |
| Court: | Overruled. |
| Dr. Hamilton: | Yes. It sounded like it had occurred in the summer of 2018. |
| State: | Okay. And did you learn who was accused of doing this to her? |
| Hankins: | Your Honor, I would object to foundation, as to hearsay. |
| Court: | Overruled. |
| Dr. Hamilton: | Yes. |
| State: | Who? |
| Dr. Hamilton: | Nathan Hankins. |

Dr. Hamilton testified that her examination of R.H. was normal and revealed no evidence of vaginal penetration. However, she testified that a normal examination was consistent with R.H.'s disclosure and that there is "a lot of evidence that shows that even witnessed to and confessed to vaginal penetration can leave no documented conclusive evidence of penetration on exams outside of the three-to five-day healing period."

[¶6.] At the time of trial, R.H. was 11 years old and in fourth grade. She testified that when Hankins would stay at her house, he sometimes slept in her bed. She testified that Hankins touched her vagina with his hand, mouth, and tongue. R.H. explained that this happened when she was in second grade. R.H. further testified that she did not tell anyone about what happened because she was uncomfortable and concerned her mother would not believe what happened. During R.H.'s testimony, Hankins made numerous objections, many of which the circuit court sustained. As the prosecutor persisted with similar questions, Hankins's attorney expressed frustration by saying: "Your Honor, I don't know how many times I can object to the same question."

[¶7.] Patricia testified that she was a stay-at-home mother who was married but separated from her husband, David. She stated that she had two children with David: S.H. and R.H. She noted that Hankins is David's adult son with another woman. Patricia testified that Hankins would frequently come over to the apartment she shared with S.H. and R.H. and bring gifts for the children. Patricia testified that Hankins slept on R.H.'s bed with her three times. She stated that R.H. disclosed Hankins's conduct in October 2019. Patricia testified that she immediately called David, who told law enforcement of Hankins's conduct at the end of October.

[¶8.] On redirect, in response to defense counsel eliciting testimony from Patricia that R.H. had met with the prosecutor multiple times, the prosecutor inquired: "Do you appreciate the fact that somebody took the time to listen to [R.H.] before today?" The circuit court overruled Hankins's objection based on relevancy and granted his request for a standing objection "to this line of questions." Patricia answered: "I think it's important for children to be heard." The State then moved to a different line of questions about David's drinking problems. In the middle of a series of questions about David's drinking, the State asked: "Is [R.H.] a truthful child?" Patricia responded, "Yes." The State then returned to additional questions about David's drinking. Hankins raised no objections to any of these questions.

[¶9.] Next, Kali Njos testified that she had known Hankins for eight years and had a relationship with him from 2016 through February 2019. She and Hankins have one daughter, Kaia. Njos stated that after her relationship with Hankins ended, she maintained contact with David. She testified that David

informed her by text messages dated October 22, 2019, that R.H. had claimed that Hankins inappropriately touched her. Njos testified that she asked Hankins by text message about R.H.'s disclosure on November 9, 2019. During her testimony, the circuit court admitted the text-message exchange between Njos and Hankins. The text-message conversation read:

| | |
|---|---|
| Njos: | Tell me the truth about something? |
| Hankins: | Anything at this point. I'm a dead man walking lol |
| Njos: | [R.H.] is saying you touched her |
| Hankins: | What do you think? |
| Njos: | I don't know |
| | I really don't |
| | I can see both |
| Hankins: | Knowing me. What do you think? |
| | Knowing "us" |
| | Our past |
| Njos: | I always thought there was a line |
| Hankins: | Yeah well lines and I don't bode well.. [sic] |
| Njos: | Lol |
| Hankins: | Lol idk what to tell you. You know me. |
| Njos: | That's messed up [N]athan [sad emoji face] |
| Hankins: | Well I am getting what I deserve |
| | And well. I cant [sic] help it. I'm sorry |

Njos testified that she took a screenshot of this text-message conversation with Hankins and sent it to David on January 9, 2020.

[¶10.]     The State next called Monica Eaton-Harris, who testified that she had a bachelor's degree in literature, a master's degree in counseling, had been a forensic interviewer for two years and three months, and had conducted 230 forensic interviews. Eaton-Harris noted that she completed 40 hours of training at the National Child Advocacy Center to become a forensic interviewer. She testified that "[a] forensic interview is a nonleading, nonsuggestive interview of a child who is a possible victim of abuse or neglect or a witness to domestic violence." She

testified that she interviewed R.H. for an hour in November 2019 when R.H. was nine years and seven months old. The jury watched a video of her interview with R.H. Eaton-Harris stated that child victims frequently delay disclosing their abuse. During redirect examination, Hankins objected to the following question:

| | |
|---|---|
| State: | Can you explain to us how the family dynamics works into your ability to get a disclosure from a child? |
| Hankins: | Objection. Foundation, Your Honor. |
| Court: | Overruled. |
| Eaton-Harris: | Children may be more likely to disclose if the alleged offender is someone that they're not close to, such as a stranger. If it's a family member or close friend, they may have more concerns about how it'll affect the dynamic, whether they'll be believed, worried about the person getting in trouble. |

[¶11.] Tifanie Petro, the director of the Children's Home Child Advocacy Center and statewide prevention education for Children's Home Society, further testified that delays in disclosure are the most common characteristic of children who are sexually abused. She testified that some children fear disclosing what happened because they do not think they will be believed.

[¶12.] When the State rested, Hankins made a motion for judgment of acquittal, which the circuit court denied. The only defense witness called was Patricia Hankins, who testified about a letter from R.H.'s school in October 2019 regarding her missing several days of school.

[¶13.] The jury found Hankins guilty of first-degree rape of a child under 13 by digital penetration and first-degree rape of a child under 13 by cunnilingus. Hankins was sentenced to 50 years on each count with 25 years suspended on each count, with the two sentences to run consecutively. Hankins appeals.

## Analysis

### *1.      Whether Hankins's arraignment was inadequate.*

[¶14.]       Hankins claims his arraignment violated his due process rights and

SDCL 23A-7-1 because the circuit court did not advise him of the charges against

him, read his indictment aloud, or confirm that he read the indictment.

Additionally, Hankins asserts the circuit court should have covered the elements of

the crimes charged in the indictment.  He contends he did not have sufficient time

to discuss the matter with his attorney before entering his pleas or waiving his

right to have the indictment read aloud.

[¶15.]       SDCL 23A-7-1 provides:

> An arraignment shall be conducted in open court, except that an
> arraignment for a Class 2 misdemeanor may be conducted in
> chambers, and shall consist of reading the indictment,
> information, or complaint, as is applicable, to the defendant or
> stating to him the substance of the charge and calling on him to
> plead thereto.
>
> A defendant must be informed that if the name in the
> indictment, information, or complaint is not his true name, he
> must then declare his true name or be proceeded against by the
> name given in the indictment, information, or complaint.  If he
> gives no other name, the court may proceed accordingly.  If he
> alleges that another name is his true name, he shall be
> proceeded against pursuant to § 23A-6-20.  He shall be given a
> copy of the indictment, information, or complaint, as is
> applicable, before he is called upon to plead.

[¶16.]       "Due process of law . . . does not require the state to adopt any

particular form of procedure [for an arraignment], so long as it appears that the

accused has had sufficient notice of the accusation and an adequate opportunity to

defend himself in the prosecution." *State v. Anderson*, 2013 S.D. 36, ¶ 12, 831

N.W.2d 54, 57 (alterations in original) (quoting *State v. Mitchell*, 491 N.W.2d 438, 444 (S.D. 1992)).

[¶17.]     On February 11, 2020, Hankins was arraigned by the circuit court. The circuit court began with a general advisement of rights to all in attendance. When the circuit court called Hankins's case, Hankins's attorney identified himself and indicated that there would be a not guilty plea. At the circuit court's request, Hankins identified himself and stated that he understood his rights. The circuit court told Hankins that he was entitled to have the indictment read aloud in open court, or he could waive that right. Hankins said: "I'll waive that right." Although the indictment was not read in open court, the circuit court individually discussed each of the four counts listed in the indictment and explained the maximum penalties allowed, the mandatory minimum sentences that applied, and the maximum fines that could be imposed. The circuit court also explained the allegations in the part II information and the potential consequences. Hankins informed the circuit court that he understood the maximum penalties and his constitutional and statutory rights. Hankins pled not guilty and denied the allegations in the part II information. Hankins's counsel expressed no concerns or objections to the process but requested a hearing date for non-evidentiary motions.

[¶18.]     Hankins did not preserve this issue for appeal; consequently, he must establish plain error. *See State v. McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d 725, 729. "To demonstrate plain error, [the appellant] must establish that there was: '(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it seriously affect[s] the fairness,

integrity, or public reputation of the judicial proceedings.'" *State v. Guziak*, 2021 S.D. 68, ¶ 10, 968 N.W.2d 196, 200 (alteration in original) (quoting *State v. Jones*, 2012 S.D. 7, ¶ 14, 810 N.W.2d 202, 206). "We invoke our discretion under the plain error rule cautiously and only in 'exceptional circumstances.'" *Id.* (quoting *Jones*, 2012 S.D. 7, ¶ 14, 810 N.W.2d at 206).

[¶19.]     Contrary to Hankins's contention, SDCL 23A-7-1 does not require the circuit court to go through each element of every charge in a defendant's indictment during the arraignment. The record establishes that Hankins's not guilty arraignment was consistent with the requirements of SDCL 23A-7-1. As to Hankins's claim of a violation of his due process rights, it is clear from the record that there was no error because he "had sufficient notice of the charge against him, pleaded not guilty, exercised his rights, and had an adequate opportunity to defend himself at trial[.]" *Anderson*, 2013 S.D. 36, ¶ 15, 831 N.W.2d at 58. There was no error concerning the circuit court's handling of this arraignment.

### 2.     *Whether the circuit court abused its discretion in making its evidentiary rulings.*

[¶20.]     "Our standard of review for evidentiary rulings 'requires a two-step process: first, to determine whether the trial court abused its discretion in making an evidentiary ruling; and second, whether this error was a prejudicial error that in all probability affected the jury's conclusion.'" *State v. Thoman*, 2021 S.D. 10, ¶ 41, 955 N.W.2d 759, 772 (quoting *Johnson v. United Parcel Serv., Inc.*, 2020 S.D. 39, ¶ 27, 946 N.W.2d 1, 8). "The trial court['s] evidentiary rulings are presumed to be correct." *State v. Babcock*, 2020 S.D. 71, ¶ 21, 952 N.W.2d 750, 757 (alteration in original) (quoting *State v. Boston*, 2003 S.D. 71, ¶ 13, 665 N.W.2d 100, 105).

[¶21.]     "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (quoting *State v. Hayes*, 2014 S.D. 72, ¶ 22, 855 N.W.2d 668, 675). "It is 'a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *Id.* (quoting *State v. Delehoy*, 2019 S.D. 30, ¶ 22, 929 N.W.2d 103, 109). Prejudicial error is when "in all probability [the error] produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *State v. Reeves*, 2021 S.D. 64, ¶ 11, 967 N.W.2d 144, 147 (alteration in original) (quoting *State v. Shelton*, 2021 S.D. 22, ¶ 16, 958 N.W.2d 721, 727).

### *Dr. Hamilton's Testimony*

[¶22.]     Dr. Hamilton was the State's first witness. Although the jury ultimately watched the video of R.H.'s interview with Child's Voice and heard directly from R.H., they had not received this evidence before Dr. Hamilton testified. The State asked Dr. Hamilton about what she had learned while obtaining a medical history before examining R.H. In particular, the State asked: "Did you learn when this event had taken place?" The circuit court overruled Hankins's hearsay objection. Dr. Hamilton responded, "Yes. It sounded like it had occurred in the summer of 2018." Dr. Hamilton was then asked, "And did you learn who was accused of doing this to her?" Again, the circuit court overruled Hankins's hearsay objection. Dr. Hamilton responded, "Nathan Hankins." Hankins argues that Dr. Hamilton's testimony was hearsay. He contends that this testimony was prejudicial because Dr. Hamilton testified as an expert, assumed that the sexual

assault occurred, indicated that Dr. Hamilton investigated the facts of R.H.'s case, and failed to inform the jury where she received her information.

[¶23.]     Hearsay is "a statement that: (1) [t]he declarant does not make while testifying at the current trial or hearing; and (2) [a] party offers in evidence to prove the truth of the matter asserted in the statement." SDCL 19-19-801(c).

[¶24.]     In her answers, Dr. Hamilton explained her understanding, from the information provided by R.H.'s forensic interviewer, of when the incidents occurred and who was involved. Dr. Hamilton was not asked, in either question, to convey an out-of-court statement made by another person, and it is not clear her answers were offered for the truth of the matter asserted. The record does not reflect why the circuit court overruled the objection. Still, even if the circuit court viewed this testimony as hearsay, it may have concluded that the statements were excepted from hearsay under SDCL 19-19-803(4) as statements made to a medical professional for purposes of diagnosis or treatment.[1] *See State v. Packard*, 2019 S.D. 61, ¶ 26, 935 N.W.2d 804, 811 (noting that in child abuse cases, "statements identifying the abuser may be reasonably pertinent to treatment"). We conclude the circuit court properly exercised its discretion in overruling the hearsay objections. Moreover, even if the evidence should have been excluded, Hankins cannot show prejudice because R.H. ultimately testified concerning the time of the events and

---

1.     SDCL 19-19-803(4) provides that the hearsay rule does not exclude a
       statement that:
               (A) Is made for--and is reasonably pertinent to--medical
               diagnosis or treatment; and
               (B) Describes medical history; past or present symptoms or
               sensations; their inception; or their general cause.

identified Hankins as the perpetrator. Additionally, the jury viewed R.H.'s forensic interview with Child's Voice.

***Patricia Hankins's Testimony***

[¶25.] Hankins argues that the circuit court abused its discretion by allowing Patricia to testify on three topics: that she appreciated that somebody took the time to listen to R.H. before trial, that David had a drinking problem, and that she believed R.H. was a truthful child. Hankins asserts that allowing Patricia to testify that she appreciated somebody listening to R.H. before trial elicited sympathy for R.H. and portrayed the prosecutor as caring. Further, he argues that Patricia's testimony about David's drinking was irrelevant because David was not a witness in the case. Lastly, Hankins contends that Patricia's testimony that R.H. was a truthful child invaded the jury's province.

[¶26.] "Evidence is relevant if: (a) [i]t has any tendency to make a fact more or less probable than it would be without the evidence; and (b) [t]he fact is of consequence in determining the action." SDCL 19-19-401. "The law favors admitting relevant evidence no matter how slight its probative value." *Thoman*, 2021 S.D. 10, ¶ 44, 955 N.W.2d at 772 (quoting *State v. Bowker*, 2008 S.D. 61, ¶ 39, 754 N.W.2d 56, 68). "Evidence, to be relevant to an inquiry, *need not conclusively prove the ultimate fact in issue*, but only have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 46, 764 N.W.2d 474, 488 (quoting 2 Jack B. Weinstein

& Margaret A. Berger, *Weinstein's Federal Evidence*, § 401.04[2][c] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2008)).

[¶27.]     After defense counsel elicited testimony from Patricia that R.H. had met with the prosecutor on multiple occasions, the prosecutor then asked, "[d]o you appreciate the fact that somebody took the time to listen to [R.H.] before today?" Hankins made several objections to the relevancy of this question. Ultimately, the circuit court overruled Hankins's relevancy objections and granted a standing objection to that line of questioning. This information sought by the question had questionable relevance, but even if the evidence was irrelevant, Hankins has not established that any error was prejudicial. Further, after the standing objection was granted, the State moved to a new line of questions regarding David's drinking problems. In the middle of that line of questions, the State asked Patricia if R.H. was a truthful child. Hankins did not object to any of those questions. As a result, Hankins failed to preserve those issues for appeal. *See State v. Roach*, 2012 S.D. 91, ¶ 27, 825 N.W.2d 258, 266 (stating that a failure to object at trial waives the issue on appeal). But even under a plain error analysis, Hankins has not established any error, much less any "plain error" concerning those two issues.

[¶28.]     The State first elicited testimony on direct examination about David's drinking while laying the foundation for an exhibit depicting a text message introduced into evidence. This information appears to have been relevant to provide context for how Patricia obtained the text message. Moreover, on cross-examination, defense counsel then elicited further testimony from Patricia regarding David's drinking problems to suggest that R.H. had no problem disclosing

other types of concerning behaviors like her father's drinking. Therefore, it was defense counsel's questions that prompted the further testimony elicited by the State on redirect regarding this topic. As to the question about whether R.H. was a truthful child, SDCL 19-19-608(a) allows testimony of a witness's character for truthfulness after such character for truthfulness has been attacked. Because R.H.'s truthfulness had been challenged, Patricia could offer a general opinion as to R.H.'s truthfulness.

### *Eaton-Harris's Testimony*

[¶29.]     Hankins argues that the circuit court abused its discretion by allowing Eaton-Harris to testify that children are more concerned about disclosing sexual assault when the offender is a family member instead of a stranger.

[¶30.]     Hankins's objection was based on a lack of foundation. Eaton-Harris described her professional work history and the special training needed to become a forensic interviewer. She testified that she had been a forensic interviewer for approximately two years and three months and had conducted 230 forensic interviews. The admitted answer was based on Eaton-Harris's perceptions made throughout her career. *See State v. Janis*, 2016 S.D. 43, ¶ 15, 880 N.W.2d 76, 80–81; *Gerlach v. Ethan Coop Lumber Ass'n*, 478 N.W.2d 828, 831–32 (S.D. 1991). There was sufficient foundation for Eaton-Harris's testimony, and the circuit court did not abuse its discretion when admitting it.

### 3. Whether the State's questioning during R.H.'s testimony and closing argument amounted to prosecutorial misconduct.

[¶31.] "If an issue of prosecutorial misconduct is preserved with a timely objection at trial, [this Court will] review the trial court's ruling under the standard of abuse of discretion." *State v. Hayes*, 2014 S.D. 72, ¶ 24, 855 N.W.2d 668, 675 (alteration in original) (quoting *State v. Ball*, 2004 S.D. 9, ¶ 49, 675 N.W.2d 192, 207). "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* ¶ 22, 855 N.W.2d at 675 (quoting *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 14, 826 N.W.2d 627, 633). "Under this standard, 'not only must error be demonstrated, but it must also be shown to be prejudicial error.'" *Id.* (quoting *State v. Moran*, 2003 S.D. 14, ¶ 13, 657 N.W.2d 319, 324).

[¶32.] "Prosecutorial misconduct implies a dishonest act or an attempt to persuade the jury by use of deception or by reprehensible methods." *Id.* ¶ 22, 855 N.W.2d at 675 (quoting *State v. Lee*, 1999 S.D. 81, ¶ 20, 599 N.W.2d 630, 634). "This Court will find that prosecutorial misconduct has occurred if (1) there has been misconduct, and (2) the misconduct prejudiced the party as to deny the party a fair trial." *Id.* ¶ 23, 855 N.W.2d at 675. "If both prongs for prosecutorial misconduct are satisfied, this Court will reverse the conviction." *Id.*

[¶33.] "[N]o hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts." *McMillen*, 2019 S.D. 40, ¶ 27, 931 N.W.2d at 733 (alteration in original)

(quoting *State v. Stetter*, 513 N.W.2d 87, 90 (S.D. 1994)). Prosecutorial misconduct is prejudicial when it "so infect[s] the trial with unfairness as to make the resulting convictions a denial of due process." *State v. Smith*, 1999 S.D. 83, ¶ 52, 599 N.W.2d 344, 355 (alteration in original) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871, 40 L. Ed. 2d 431 (1974)). "'A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone,' but, if the prosecutor's conduct affects the fairness of the trial when viewed in context of the entire proceeding, reversal can be warranted." *McMillen*, 2019 S.D. 40, ¶ 27, 931 N.W.2d at 733 (quoting *Stetter*, 513 N.W.2d at 90 (S.D. 1994)).

### *R.H.'s Direct Examination*

[¶34.] Hankins argues that the State's line of questions during its direct examination of R.H. constituted prosecutorial misconduct. He notes that even though the circuit court repeatedly sustained his objections about this line of questioning, the State persisted with its questions.

[¶35.] Even if the circuit court properly sustained the prosecutor's questions during R.H.'s direct examination, this alone does not constitute prosecutorial misconduct. From our review of the record, the prosecutor's questioning of R.H. does not constitute prosecutorial misconduct because it did not involve an attempt to persuade the jury by use of deception or by reprehensible methods.

*State's Closing Argument*

[¶36.]     Additionally, Hankins asserts that the State committed prosecutorial misconduct during its rebuttal closing argument. The pertinent part reads as follows:

| | | |
|---|---|---|
| State: | | And so then what happens here, you should get into, like, the revictimization of [R.H.] And what I mean by that is that [R.H.] is being attacked for being a liar. So she gets raped by her brother, and then the defense says that she's a liar because you can't find the defendant innocent if you believe that [R.H.] has told you the truth. So when you finally get a child able to come into court and face a whole crowd of people that she doesn't know and have the courage to talk, then she gets revictimized. It's like, well, you got raped, but now we're going to basically rape you again by -- |
| Hankins: | | Objection, Your Honor. Improper argument. |
| Court: | | Sustained. [Prosecutor], that is sustainable. |
| State: | | Yes, Your Honor. |
| Court: | | Nothing like that again, please. |
| State: | | Sure. Courage of children should not be met by attacks upon them. You have to decide was that child telling the truth? Was that child telling the truth when she went to the forensic interview? Was that child telling the truth when she swore the oath in front of you two days ago to tell you what happened. Did she make that all up? You know, is this all some sort of a master plan? And then, in addition to that, did somehow this evidence in the form of text messages between the defendant and Kali, was that all invented? Is that some sort of a frame-up too, because where's the evidence to that? What witness came in and said anything like that? That's all -- |
| Hankins: | | Objection. It's a shifting burden, Your Honor. |
| Court: | | Sustained. |
| State: | | Where's the evidence that supports that kind of a claim that you heard from the defense? Was there somebody that came in and said -- |
| Hankins: | | Your Honor, objection. That shifts the burden. |
| Court: | | Sustained. |

[¶37.]     The State concedes that the statement, "It's like, well, you got raped, but now we're going to basically rape you again by --" was improper and amounted

to misconduct. A prosecutor cannot "inject[ ] 'unfounded or prejudicial innuendo into the proceedings . . . [or appeal] to the prejudices of the jury.'" *Smith*, 1999 S.D. 83, ¶ 46, 599 N.W.2d at 354 (second omission and alteration in original) (quoting *State v. Blaine*, 427 N.W.2d 113, 115 (S.D. 1988). This prosecutor's statement was an attempt to persuade by inappropriate means. Moreover, the prosecutorial misconduct occurred during the State's rebuttal argument when the prosecutor knew Hankins had no opportunity to respond. Even if the prosecutor believed he was responding to an improper argument by defense counsel, the comments were wholly unjustified and were no less an attempt to improperly persuade the jury by reprehensible methods.

[¶38.]    "[D]ue process does not guarantee a defendant the right to an error-free trial, nevertheless it must be a fair trial. Prosecutorial misconduct reaches the level of a federal constitutional violation only if the argument 'so infect[s] the trial with unfairness as to make the resulting convictions a denial of due process.'" *Smith*, 1999 S.D. 83, ¶ 52, 599 N.W.2d at 355 (quoting *Donnelly*, 416 U.S. at 643, 94 S. Ct. at 1871). "Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *Lee*, 1999 S.D. 81, ¶ 21, 599 N.W.2d at 634 (quoting *State v. Hofman*, 1997 S.D. 51, ¶ 13, 562 N.W.2d 898, 902). "[N]o hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts." *Id.* (quoting *Stetter*, 513 N.W.2d at 590).

[¶39.]     Hankins immediately objected to the State's argument. In the jury's presence, the circuit court sustained the objection and admonished the prosecutor by stating, "[n]othing like that again." The circuit court did not strike the comment, but the court's comments clearly delineated the impropriety of the prosecutor's comments to the jury. Further, the circuit court gave the jury three instructions advising them that statements made during closing arguments were not evidence. *See Janis*, 2016 S.D. 43, ¶¶ 25, 28, 880 N.W.2d at 83, 84 (despite improper conduct by prosecutor, result of trial was not affected when the circuit court gave the jury a correct instruction on the elements of the offense and jury's duties). We generally presume that juries follow the court's instructions and have no reason to believe they failed to do so in this case. *State v. Eagle Star*, 1996 S.D. 143, ¶ 22, 558 N.W.2d 70, 75. Hankins did not move for a mistrial or request the circuit court to take further action to address the misconduct. Further, R.H. provided detailed statements and testimony concerning the abuse by Hankins, and her statements were corroborated by other evidence. This included evidence of grooming, that Hankins often slept in the same bed with R.H., and his admissions in a text message with a former girlfriend. In light of this case's circumstances, it is improbable that the prosecutor's misconduct altered the jury's verdict.[2] Hankins has failed to show prejudicial error.

---

2.     Hankins highlights that this is not the first time this prosecutor has been found to have committed prosecutorial misconduct by this Court. *See Smith*, 1999 S.D. 83, ¶ 49, 599 N.W.2d at 355. This fact may be relevant to the first prong of prosecutorial misconduct and show the prosecutor's "penchant for making statements meant to inflame the passion of the jury and go outside the realm of admissible evidence," but it does not establish the element of

(continued . . .)

## Conclusion

[¶40.] The circuit court did not abuse its discretion in handling Hankins's arraignment or in its evidentiary rulings. Although misconduct occurred during the State's closing rebuttal argument, it did not constitute prejudicial error. We affirm.

[¶41.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.

---

(. . . continued)

prejudice given the evidence of guilt on this record. *Id.*, 1999 S.D. 83, ¶ 49, 599 N.W.2d at 354.